**IN THE COURT OF APPEALS OF TENNESSEE**

**AT KNOXVILLE**

FILED

July 13, 1999

Cecil Crowson, Jr.
Appellate Court
Clerk

| | |
|---|---|
| NATIONAL GAS DISTRIBUTORS, | ) C/A NO. 03A01-9902-CH-00077 |
| | ) |
| Plaintiff-Appellant, | ) SEVIER CHANCERY |
| | ) |
| v. | ) HON. TELFORD E. FORGETY, JR., |
| | ) CHANCELLOR |
| SEVIER COUNTY UTILITY | ) |
| DISTRICT of Sevier County, | ) |
| Tennessee, | ) |
| | ) |
| Defendant-Appellee. | ) |
| | ) |
| and | ) |
| | ) |
| PAUL G. SUMMERS, Attorney | ) |
| General and Reporter for the State of | ) |
| Tennessee, | ) AFFIRMED |
| | ) AND |
| Intervening Defendant-Appellee. | ) REMANDED |

DONALD K. VOWELL, VOWELL & ASSOCIATES, Knoxville, for Plaintiff-Appellant.

ROBERT E. COOPER, JR., and W. SCOTT SIMS, BASS, BERRY & SIMS, PLC., Nashville, and
RONALD E. SHARP, SHARP & RIPLEY, Sevierville, for Defendant-Appellee.

PAUL G. SUMMERS, Attorney General and Reporter,
MIKE E. MOORE, Solicitor General, and
JANET M. KLEINFELTER, Senior Counsel, Financial Division, Nashville,
for Intervening Defendant-Appellee.

**O P I N I O N**

Franks, J.

Plaintiff appeals from a T.R.C.P. 12.02(6), dismissal of its complaint.

Plaintiff's principal place of business is in Knoxville, Tennessee, and it

sells and distributes propane in Sevier County, Tennessee. Defendant is a utility

district created pursuant to the Tennessee Utility District Law of 1937.

Initially, plaintiff alleged that the Utility District Law of 1937 did not allow defendant to sell propane, and sought a permanent injunction enjoining defendant from marketing and selling propane to its customers, or from engaging in other unauthorized, unlawful or ultra vires activities.

Subsequently, plaintiff amended its complaint to allege that after the original complaint was filed, defendant proceeded to contact certain members of the Tennessee General Assembly and cause those members to assist in enacting a law that would free the defendants from liability. The law which was enacted by the General Assembly, amended the Utility District Law of 1937, and added a new subsection which states:

> Any district providing propane gas service on April 15, 1998, is empowered to provide such service within the county or counties in which it is providing service on that date without any further proceedings before or approvals of any county executive, the utility management review board or any other person or agency; provided, the authorization contained in this subsection shall not preclude any other person, firm or corporation, public or private, from furnishing propane gas service within the area served by the district.

Tenn. Code Ann. § 7-82-302(j) (1998).

Plaintiff's amended complaint stated the statute is impermissible under Article I, § 8 and Article II, § 8 of the Tennessee Constitution, and the 5th and 14th Amendments to the United States Constitution.

It specifically alleged that the statute would operate to suspend the general law for the benefit of seven favored utility districts, thereby giving them a special privilege to sell propane, which is not available to the other utility districts. It stated that the amendment creates two classes of propane dealers, with one being granted special privileges and the other not. It also averred that the amendment places a special burden on private propane dealers doing business in territories of the seven favored utility districts that is not placed on propane dealers doing business in the rest

2

of the State, because those dealers must compete with an entity that does not have to pay certain taxes and that can raise capital by bond issues. The Complaint alleges this treatment creates two classes of propane dealers, one which is exempt from paying specified taxes, and one which is not, and that this classification is arbitrary, capricious and unreasonable.

After the statute came under attack, the Attorney General was permitted to intervene, and defendant again moved to dismiss the amended complaint. The motion was granted by the Trial Judge and this appeal ensued.

Whether the complaint was properly dismissed for failure to state a claim upon which relief can be granted, essentially presents two questions: 1. Whether plaintiff has standing to challenge the statute, and 2. If plaintiff has standing, whether the complaint states a claim for relief.

We are required to construe the allegations of the complaint in plaintiff's favor, and accept the allegations of fact as true. However, inferences to be drawn from the facts or legal conclusions set forth in the complaint are not required to be taken as true. *Riggs v. Burson*, 941 S.W.2d 44, 47-48 (Tenn. 1997), *cert. denied* 118 S. Ct. 444 (1997).

There are twenty-one utility districts in Tennessee, of which seven were providing propane service on April 15, 1998, including defendant. T.C.A. §7-82-302(j) (1998), applies to seven utility districts and either divides utility districts into two groups, one which can lawfully sell propane and one which cannot; or divides utility districts into two groups, one which can lawfully sell propane without going through the approval process set out in the statue, and one which must get prior approval before selling propane. Either classification is a classification among utility districts, which the defendant, we conclude, does not have standing to challenge.

Standing is a judge-made doctrine "used to refuse to determine the

3

merits of a legal controversy irrespective of its correctness where the party advancing it is not properly situated to prosecute the action." *Knierim v. Leatherwood*, 542 S.W.2d 806, 808 (Tenn. 1976). To establish standing, a party must show:

> (1) that it sustained a distinct and palpable injury, (2) that the injury was caused by the challenged conduct, and (3) that the injury is apt to be redressed by a remedy that the court is prepared to give.

*Metro. Air Research Testing Auth., Inc. v. Metro. Gov. of Nashville*, 842 S.W.2d 611, 615 (Tenn. App. 1992) (*citing Allen v. Wright*, 468 U.S. 737, 752 104 S. Ct. 3315, 3325, 82 L. Ed. 2d. 556 (1984); *Morristown Emergency & Rescue Squad, Inc. v. Volunteer Dev. Co.*, 793 S.W.2d 262, 263 (Tenn. App. 1990)). *See also Price v. State*, 806 S.W.2d 179, 181 (Tenn. 1991); *Davis v. Allen*, 307 S.W.2d 800 (Tenn. App. 1957) *perm. to app. denied.* Even if a statute is unconstitutional,

> only those who have a right to raise a question of its unconstitutionality may invoke the aid of the courts to have it judicially set aside, and the constitutionality of a legislative act is open to attack by those persons whose rights are affected thereby. Before a law can be assailed by any person on the ground that it is unconstitutional, he must show that he has an interest in the question in that the enforcement of the law would be an infringement on his rights. Assailants must therefore show the applicability of the statute to them and that they are thereby injuriously affected.

*Parks v. Alexander*, 608 S.W.2d 881, 885 (Tenn. App. 1980) (*quoting* 16 Am. Jur. 2d *Constitutional Law* § 188 (1979)).

Plaintiff argues that the classifications among utility districts are a violation of due process and equal protection under United States and Tennessee Constitutions. It states that it is injured because it is forced to compete with utility districts that have a substantial advantage because they do not pay taxes, among other things. Thus, its injury is due to having to compete for business with utility districts, not due to either some utility districts being allowed to sell propane and some not, or some districts being allowed to sell propane without going through the approval process, and some not. As such, it cannot establish the causal element of standing,

4

therefore it cannot challenge the amendment because it treats utility districts differently.

Plaintiff argues, however, that it does have standing because defendant is engaging in illegal and unfair competition and that plaintiff has been harmed by this competition. In support of its position, it cites an Alabama case which says, "[c]learly, the threat of competition is sufficient to provide standing to contest the legality of a competitor's facility," *Traders & Farmers Bank of Haleyville v. Central Bank of Ala.*, 320 So.2d 638, 641 (Ala. 1975), and a federal case which states, ". . . where, as here, the threatened competition arises from an allegedly illegal facility, the appellee state banks have standing . . . ." *Whitney Nat. Bank v. Bank of New Orleans*, 323 F.2d 290, 300 (D.C. Cir. 1963). While plaintiff may have standing to challenge illegal competition, it admits that the amendment authorizes defendant to sell propane. As such, the activity is not illegal, as it is explicitly authorized by statute. Plaintiff, to have standing, must have an interest harmed by the classification of the statute, which it has not alleged.

Plaintiff could have standing to challenge any classifications that may have been created between private and public propane dealers, but it failed to state this claim because, as the Trial Judge found, there is a rational basis to allow utility districts to sell propane. Plaintiff did not allege any intentional discrimination in the enactment of the statute. The Amendment, as applied to private propane dealers, is neutral on its face, and there is no allegation that the statute violates plaintiff's due process or equal protection.

Plaintiff argues the classifications in the amendment violate the 14th Amendment to the United States Constitution, and Article 1, §8 and Article 11 §8 of the Tennessee Constitution.

The Tennessee Supreme Court has held that the due process guarantees

5

in the 14th Amendment to the United States Constitution and Article 1, § 8 of the Tennessee Constitution are "synonymous." *Newton v. Cox*, 878 S.W.2d 105. 110 (Tenn. 1994), *cert. denied* 513 U.S. 869 (1994); "Unless a fundamental right is involved, the test for determining whether a statute comports with substantive due process is whether the legislation bears 'a reasonable relation to a proper legislative purpose' and is 'neither arbitrary nor discriminatory.'" *Newton*, 878 S.W.2d at 110 (*citing Nebbia v. New York*, 291 U.S. 502, 537, 54 S. Ct. 505, 516, 78 L. Ed. 940 (1934); *National Railroad Passenger Corp. v. Atchison, Topeka Santa Fe Ry. Co.*, 470 U.S. 451, 105 S. Ct. 1441, 84 L. Ed. 2d 432 (1985).

Similarly, while the "equal protection provisions of the Tennessee Constitution and the Fourteenth Amendment are historically and linguistically distinct," the Fourteenth Amendment and Article 1, § 8 and Article 11, § 8 of the Tennessee Constitution "confer essentially the same protection upon the individuals subject to those provisions." *Tenn. Small Sch. Sys. v. McWherter*, 851 S.W.2d 139, 152 (Tenn. 1993) (citations omitted). In analyzing equal protection claims under the Tennessee Constitution, Tennessee has followed the framework developed by the United States Supreme Court. *Id.* at 153; *Newton v. Cox*, 878 S.W.2d 105, 109 (Tenn. 1994) *cert. denied* 513 U.S. 869 (1994); *State v. Tester*, 879 S.W.2d 823, 827-828 (Tenn. 1994).

Both the United States Supreme Court and the Tennessee Supreme Court utilize three standards of scrutiny in examining equal protection claims, depending on the right asserted. *Tenn. Small Sch. Sys.*, 851 S.W.2d at 153 (*citing City of Memphis v. International Brotherhood of Elec. Workers Union*, 545 S.W.2d 98, 101 (Tenn. 1976) (reduced scrutiny); *Mitchell v. Mitchell*, 594 S.W.2d 699, 701 (Tenn. 1980) (heightened scrutiny); *Doe v. Norris*, 751 S.W.2d 834, 840 (Tenn. 1988) ( strict scrutiny)). Equal protection "requires strict scrutiny of a legislative classification only

when the classification interferes with the exercise of a 'fundamental right' (e.g., right to vote, right of privacy), or operates to the peculiar disadvantage of a 'suspect class' (e.g., age or race)." *Tester*, 879 S.W.2d at 828 (citations omitted). Intermediate scrutiny only applies when the classification involves a quasi-suspect class, such as gender or illegitimacy. *Craig v. Boren*, 429 U.S. 190, 198-199, 97 S. Ct. 451, 457, 50 L. Ed. 2d 397 (1976). Most often, "the legislative choice is limited to whether the classifications have a reasonable relationship to a legitimate state interest." *Norris,* 751 S.W.2d at 841. The Tennessee Supreme Court said long ago,

> If legislation arbitrarily confers upon one class benefits, from which others in a like situation are excluded, it is a grant of a special right, privilege, or immunity, prohibited by the Constitution, and a denial of the equal protection of the laws to those not included. If the legislation, without good reason and just basis, imposes a burden upon one class which is not imposed upon others in like circumstances or engaged in the same business, it is a denial of the equal protection of the laws to those subject to the burden and a grant of an immunity to those not subject to it.

*State v. Nashville C. & St. L. Ry. Co.*, 124 Tenn. 1, 135 S.W. 773, 775 (1911). However, "[u]nder this standard, if some reasonable basis can be found for the classification, or if any state of facts may reasonably be conceived to justify it, the classification will be upheld." *Tenn. Small Sch. Sys.*, 851 S.W.2d at 153.

The equal protection arguments and the due process arguments can be dealt with together, because they both require the same analysis. If there is a rational basis for the statute, and if the statute is not discriminatory, then it must be upheld. Here, the trial court specifically found that the legislature had a rational basis for enacting this legislation. The Court indicated that if it was reasonable to create a utility district to provide services such as natural gas, water, and sewer, then it was reasonable to allow utility districts to provide propane to its customers.

Ensuring that the citizens of the state have access to needed utilities, like natural gas and propane, is a proper legislative purpose. It is rational to allow utility

7

districts to provide propane in addition to other services, and it is rational to allow the utility districts already providing propane to continue to do so, in order that their customers do not suffer a lapse in service while the districts are getting approval from the county executive.

The amendment, on its face, does not discriminate against any class of private propane dealers. It applies only to utility districts. The only mention made of private dealers is the section stating that the amendment will not prevent any other person or entity from selling propane gas, which does not establish any discrimination against any person or entity.

Plaintiff, however, essentially argues the amendment is discriminatory because the downstream effects create a disparate impact on private propane dealers because they are subject to taxation and other burdens which do not apply to the utility districts. While violations of equal protection have been found in cases where a statute is neutral on its face, but has a disparate impact on particular classes, those cases involve discrimination against suspect or quasi-suspect classes, like race, age, or gender. *See Yick Wo v. Hopkins*, 118 U.S. 355, 6 S. Ct. 1064, 30 L. Ed. 220 (1886); *Arlington Heights v. Metropolitan Housing Dev. Corp.*, 429 U.S. 252, 97 S. Ct. 555, 50 L. Ed. 2d 450 ( 1977); *Personnel Adm'r of Mass. V. Feeney*, 442 U.S. 256, 99 S. Ct. 2282 60 L. Ed. 2d 870 (1979).

This case does not involve a suspect or quasi-suspect class, and to establish any violation of due process or equal protection by the amendment, plaintiff must show that the Legislature intended to discriminate against such dealers when it enacted the amendment. Plaintiff would be required to illustrate that the Legislature "selected or reaffirmed a particular course of action at least in part 'because of ,' not merely 'in spite of,' its adverse effects on an identifiable group." *Feeney,* 442 U.S. at 279, 99 S. Ct. at 2296. Plaintiff's allegations do not assert that the Legislature enacted

8

this amendment, at least in part, to discriminate against private propane dealers. Moreover, discrimination against private propane dealers is not apparent on the face of the amendment. Accordingly, plaintiff has not stated a claim for violation of due process or equal protection.

We affirm the judgment of the Trial Court for the foregoing reasons, and remand with cost of the appeal assessed to plaintiff.

\_\_\_\_\_

_____
Herschel P. Franks, J.

CONCUR:

_____
Charles D. Susano, Jr., J.

_____
William H. Inman, Sr.J.