IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
May 8, 2002 Session

# THE TENNESSEE DEPARTMENT OF HEALTH, ET AL. v. GARY C. BOYLE, M.D., ET AL.

### Appeal from the Chancery Court for Davidson County
### No. 99-1343-I    Irvin H. Kilcrease, Jr., Chancellor

_____

### No. M2001-01738-COA-R3-CV - Filed December 19, 2002

_____

The issue in this case is the constitutionality of a Tennessee statute requiring a private clinic that performs a "substantial number" of abortions to acquire a certificate of need from the Health Facilities Commission and a license from the Department of Health. The Chancery Court of Davidson County upheld the statute, enjoined the defendants from operating without a certificate and a license, and imposed substantial monetary sanctions for civil contempt. We hold that the statute violates relevant provisions of the United States and Tennessee Constitutions. We therefore reverse the judgment below and dismiss the contempt charge.

### Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Reversed and Remanded

BEN H. CANTRELL, P.J., M.S., delivered the opinion of the court, in which WILLIAM C. KOCH, JR., J. and ROBERT E. CORLEW, III, SP. J., joined.

Thomas C. Jessee, Johnson City, Tennessee, for the appellants, Gary C. Boyle, M.D., Wesley A. Adams, Jr., M.D., Adams & Boyle, P.C., d/b/a The Women's Center; Angus McDonald Green Crook, M.D., Debra Jo Adams, Leisa Boyle, Welshwood Partnership, Adams & Boyle Partnership, and Regina Taylor Hensley.

Paul G. Summers, Attorney General and Reporter; Michael E. Moore, Solicitor General; Michael W. Catalano, Associate Solicitor General; and E. Blaine Sprouse, Assistant Attorney General, for the appellee, State of Tennessee.

# OPINION

## I.

Dr. Wesley Adams and Dr. Gary Boyle are residents of Bristol, Tennessee. They are both licensed to practice medicine in Tennessee, and prior to 1989, they practiced obstetrics and gynecology in Bristol. In 1990 they opened an office in Nashville as partners. In 1992 they incorporated their Nashville practice under the name of Adams & Boyle, P.C., and their clinic was known as The Women's Center.

The Women's Center offered full gynecological services to women, including first trimester abortions. The Tennessee legislature has defined any place or building that provides medical or surgical services to terminate pregnancies as an "ambulatory surgical treatment center" (ASTC). But exempted from the definition are "private physicians' and dentists' office practices, except those private physicians' and dentists' offices in which a substantial number of medical or surgical pregnancy terminations are performed." Tenn. Code Ann. § 68-11-201(3). Thus, any facility that is not a private physician's or dentist's office where even one abortion is performed is an ASTC. On the other hand, a private physician or dentist may perform any number of surgical procedures, of varying degrees of severity and risk, without being classified as an ASTC, so long as the surgical procedures do not include a "substantial number" of abortions.

In terms of state regulation the consequences of being an ASTC are enormous. An ASTC is also defined as a Health Care Institution. Tenn. Code Ann. § 68-11-102(4)(A) and Tenn. Code Ann. § 68-11-106(a)(1) prevents the "construction, development, or other establishment of any type of health care institution" without receiving a certificate of need (CON) from the Health Facilities Commission (HFC). An ASTC also must be licensed by the Department of Health (the Department). Tenn. Code Ann. § 68-11-204(a)(1). The Department performs its licensing functions through the Board for Licensing Health Care Facilities. Tenn. Code Ann. § 68-11-202(a)(2). As this trip to and fro in the Code indicates, even first trimester abortions have gotten a great deal of attention from the legislature.

In the early 1990's the Department of Health suggested to Drs. Adams and Boyle that they should acquire a CON. They did so in June of 1994, and applied for an ASTC license. The Department inspectors, however, insisted that they install certain equipment in the Women's Center that Drs. Adams and Boyle did not think was required. The dispute dragged on and the CON lapsed in August of 1996. Drs. Adams and Boyle continued to operate their offices in Bristol and Nashville.

Drs. Adams and Boyle filed a new application for a CON for both facilities in September of 1998. In December of 1998 the HFC deferred action on the Bristol office and denied the application for the Nashville office, allegedly to punish Drs. Adams and Boyle for operating without a CON for an extended period of time. When operations at both facilities continued, the Department filed this

action on May 13, 1999 seeking an injunction to prevent the Women's Center from operating an ASTC without a CON and a proper license.

The defendants alleged in their answer that the statute and the actions taken by the Department violated the Tennessee and United States Constitutions relating to the right of privacy of women and the rights of the defendants to due process and equal protection. On July 1, 1999, the court overruled the defenses and enjoined the defendants and anyone associated with them from operating an ASTC without a CON and a license as required by law.

In the meantime, Drs. Adams and Boyle took two actions. On May 28, 1999, they filed an action in the United States District Court in Nashville seeking an adjudication that the statutes on which the State relied were unconstitutional; and on June 25, 1999, after the chancellor had issued a temporary restraining order against operating without a CON and a license, they leased the Women's Center to Dr. James Oliver. The federal court chose not to hear any issues relating to Drs. Adams and Boyle since those issues were pending in the state court. The plaintiffs amended the federal action to make Dr. Oliver and the Bristol Women's Center the plaintiffs and to dismiss Drs. Adams and Boyle as party plaintiffs.

On March 6, 2000, the Department and HFC amended their complaint in this action to include Dr. Oliver, the employees/manager of the Women's Center, Dr. Angus Crook who performed abortions at the Women's Center on a contract basis, and the owners of the property on which the Women's Center sits. Again, the complaint sought an injunction against operating a ASTC without a CON or a proper license. The same defenses were raised by the new defendants.

On April 17, 2000, the federal court issued a temporary injunction enjoining the Department/HFC from enforcing the statutes as to Dr. Oliver and the Bristol Women's Center. The next day the chancery court enjoined all the defendants except Dr. Oliver from operating, owning, managing, or maintaining an ASTC without a CON and a license.

On September 26, 2000, the Department/HFC filed a petition to hold certain defendants in civil contempt for violating the courts' injunctions. The court found the defendants in contempt and imposed a fine of $10,000 each on Dr. Adams and Dr. Boyle; $7,500 on Dr. Crook, $5,000 each on the executive director of Adams & Boyle, P.C. and Welshwood Partnership, the business entity that owned the property; and $2,500 each on the office manager at the Welshwood facility and one of the partners in the Welshwood partnership. The court allowed the defendants to purge themselves of contempt by withdrawing their relationship to the Welshwood facility, including employment and any other interest they might have therein. The court also ordered the defendants to pay the plaintiff's attorneys' fees in the amount of $17,484.00.

On May 18, 2001, the court entered a final judgment permanently enjoining the defendants from operating an ASTC without a CON and a valid license.

## II.
### CONSTITUTIONALITY OF THE STATUTE

As we have found, a doctor may perform abortions in his/her own private office without a CON or a license to operate the facility, unless he/she performs a "substantial number" of abortions. In that case the facility becomes an ASTC subject to stricter regulation by the Department. Accepting patients in an unlicensed facility is also a class B misdemeanor. Tenn. Code Ann. § 68-11-213(b)(2). For a number of reasons, the defendants say that the statute violates the Tennessee and the United States Constitution.

There are certain principles the courts use when litigants mount an attack on the constitutionality of a statute. First, the courts presume that the Acts of the General Assembly are constitutional, *In Re Petition of Burson*, 909 S.W.2d 768 (Tenn. 1995). Consequently, the courts indulge every presumption and resolve every doubt in favor of constitutionality. *State v. Lyons*, 802 S.W.2d 590 (Tenn. 1990). When the courts find that a statute may be construed in different ways, they are required to adopt a construction that will sustain the statute and avoid a conflict with the constitution. *Marion County Bd. v. Marion Co. Election Comm'n*, 594 S.W.2d 681 (Tenn. 1980). The courts also have a duty to ascertain and carry out the legislature's intent without unduly restricting or expanding the statute's coverage. *Lavin v. Jordon*, 16 S.W.3d 362 (Tenn. 2000).

As these rudimentary principles show, the persons challenging a statute have the burden of showing its unconstitutionality, *Fritts v. Wallace*, 723 S.W.2d 948 (Tenn. 1987); and unless the statute restricts a fundamental right, the courts will uphold it if the courts are able to conceive of a rational basis for the measure that is reasonably related to a legitimate governmental interest. *Riggs v. Burson*, 941 S.W.2d 44 (Tenn. 1997). Conversely, "where certain fundamental rights are involved . . . regulation limiting these rights may be justified only by a 'compelling state interest' . . . and . . . legislative enactments must be narrowly drawn to express only the legitimate state interests at stake." *Roe v. Wade*, 410 U.S. 113, 155 (1973); *Planned Parenthood v. Sundquist*, 38 S.W.3d 1 (Tenn. 2000).

A person challenging a statute on constitutional grounds must also have standing to do so. *National Gas Distributors v. Sevier County Utility District*, 7 S.W.3d 41 (Tenn. Ct. App. 1999). Under state law the standing requirement demands a showing that the statute infringes the rights of the person attacking it. *Id.* "A person has no standing to contest the constitutionality of a statutory provision he claims to be deficient unless the provision . . . has been used to deprive him of his rights." *State v. Johnson*, 762 S.W.2d 110, 118 (Tenn. 1988). Under federal law, Article III of the United States Constitution restricts the jurisdiction of federal courts to actual "cases or controversies." *Younger v. Harris*, 401 U.S. 37 (1971). To have standing to challenge a statute on constitutional grounds a plaintiff must allege that he has "sustained or is immediately in danger of sustaining some direct injury as a result of the challenged statute . . . . The injury or threat of injury

must be both 'real and immediate' not 'conjectural or hypothetical.'" *O'Shea v. Littleton*, 414 U.S. 488, 494 (1974). With respect to abortion rights, both the United States Supreme Court and the Tennessee Supreme Court have accorded physicians standing to challenge the constitutionality of abortion statutes on behalf of their patients. "[A] physician is uniquely qualified to litigate the constitutionality of the State's interference with, or discrimination against, [a woman's decision to terminate her pregnancy]." *Singleton v. Wolff*, 428 U.S. 106, 117 (1976). *See also Planned Parenthood v. Sundquist*, 38 S.W.3d 1 (Tenn. 2000).

The courts have also applied the standing requirement to the special circumstance where a defendant claims that a statute is too vague to satisfy due process. In *Parker v. Levy*, 417 U.S. 733 (1974), the U.S. Supreme Court held that a person who clearly understands that his own conduct comes within the statute's prohibitions cannot challenge the statute because it might be vague as to some other conduct. Following this line of thought, our Supreme Court said, "a party who engages in conduct that is clearly proscribed by the state cannot complain of the vagueness of the law as applied to others." *State v. Burkhart*, 58 S.W.3d 694 at 699 (Tenn. 2001).

### III.
#### DUE PROCESS

The defendants assert that the statute requiring a doctor's office to obtain a CON and a license to operate if a "substantial number" of abortions are performed in the office does not satisfy the constitutional requirement of due process. *See* U.S. Const., amend. XIV; Tenn. Const., art. I, § 8. Since Tenn. Code Ann. § 68-11-213(b)(2) makes the operation of an ASTC without a license a crime, due process requires that such statutes be drawn with a certain clarity. *City of Chicago v. Morales*, 527 U.S. 41 (1999). The reasons are two-fold. The first is one of fundamental fairness. If the government thinks it is necessary to punish one of its citizens for violating the government's laws, fairness dictates that the person affected be able to understand what is expected or prohibited. *Leech v. American Booksellers Ass'n, Inc.*, 582 S.W.2d 738 (Tenn. 1979). The second reason is based on our concept of equality before the law. An imprecise law encourages arbitrary and discriminatory enforcement. *See Crites v. Smith*, 826 S.W.2d 459 at 473 (Tenn. Ct. App. 1991)(Judge Koch concurring and dissenting.) As the United States Supreme Court said in *Grayned v. City of Rockford*, 408 U.S. 104 (1972),

> a vague law impermissibly delegates basic policy matters to policemen, judges and juries for resolution on an <u>ad hoc</u> and subjective basis, with the attendant danger of arbitrary and discriminatory application.

408 U.S. at 108-9.

This invalidating principle has been called "void for vagueness." *Underwood v. State*, 529 S.W.2d 45 (Tenn. 1975). But the term "void" may be misleading. No one is required to obey a void law. *Cumberland Capital Corp. v. Patty*, 556 S.W.2d 516 (Tenn. 1977). Yet there are some laws that are invalid as to some defendants and not invalid as to others. The courts have called laws that

are invalid only in certain circumstances "invalid as applied," while laws that are invalid in every conceivable circumstance are "facially invalid." *Bowen v. Kendrick*, 487 U.S. 589 (1988). The distinction has been described in this way: "If a statute is unconstitutional as applied, the state may continue to enforce the statute in different circumstances where it is not unconstitutional, but if a statute is unconstitutional on its face, the State may not enforce the statute under any circumstances." *Women's Medical Professional Corp. v. Voinovich*, 130 F.3d 187, 193 (6th Cir. 1997). Therefore, it seems to us that only those laws that are facially invalid are truly void.

Arguing that the law under consideration is not facially invalid, the State argues that the *Parker v. Levy/State v. Burkhart* principle prevents the defendants from attacking the statute on vagueness grounds since they knew that they were performing a large number of abortions and might come within the statutes' application. Using the language of the United States Supreme Court, the State says:

> None of them [past cases] suggests that one who has received fair warning of the criminality of his own conduct from the statute in question is nonetheless entitled to attack it because the language would not give similar fair warning with respect to other conduct which might be within its broad and literal ambit.

*Parker v. Levy*, 417 U.S. 733 at 756.

But the *Parker v. Levy* prohibition also has its exceptions. By the time the court decided *Parker v. Levy* it had already decided that an unaffected plaintiff could assert a vagueness defense "where individuals not parties to a particular suit stand to lose by its outcome and yet have no effective avenue of preserving their rights themselves." *Eisenstadt v. Baird*, 405 U.S. 438 (1972). Another exception allows

> Litigants . . . to challenge a statute not because their own rights of free expression are violated, but because of a judicial prediction or assumption that the statute's very existence may cause others not before the court to refrain from constitutionally protected speech or expression ...

*Broadrick v. Oklahoma*, 413 U.S. 601, 612 (1973). Such statutes are invalidated because they are "overbroad," according to the U.S. Supreme Court. *Id.* Although this doctrine is applied most often to laws that impact First Amendment rights, our Supreme Court has recognized that it applies also to other constitutionally protected conduct. *See State v. Burkhart*, 58 S.W.3d at 701 (Tenn. 2001). The United States Supreme Court has now held that the standing requirements should be relaxed when the challenged statute affects a substantial amount of constitutionally protected conduct. *Village of Hoffman Estates v. Flipside, Hoffman Estates, Ltd.*, 445 U.S. 489, 494-95 (1982). Thus, even a person whose conduct is at the core of the activities clearly covered by a statute's terms may raise a vagueness defense if the state is one that is likely to chill the exercise of constitutionally protected conduct. *United States v. Loy*, 237 F.3d 251, 259 (3rd Circ. 2001). Obtaining a first

trimester abortion is undisputedly constitutionally protected conduct. *Planned Parenthood of Middle Tennessee v. Sundquist*, 38 S.W.3d 1 (Tenn. 2000).

It also seems to us that the *Parker v. Levy* principle does not apply to the second prong of the due process argument – that a law encourages arbitrary enforcement. If a defendant has notice that his conduct is unlawful, it makes sense to say to him "you cannot complain that the law may not give adequate notice to someone else." But the same logic does not apply to a claim that a law commits law enforcement to the personal whims of officers, prosecutors, judges, and juries. *State v. Lyons*, 802 S.W.2d 590 (Tenn. 1990).

The U.S. Supreme Court seems to be moving in that direction. In two recent cases the Court stated that "the more important aspect of the vagueness doctrine is not actual notice, but the other principal element of the doctrine – the requirement that a legislature establish minimal guidelines to govern law enforcement." *Kolender v. Lawson*, 461 U.S. 352, 358 (1983); *City of Chicago v. Morales*, 527 U.S. 41 (1999). While both cases involved loitering statutes that substantially impacted First Amendment rights, the Court's majority in *Kolender* and a plurality in *City of Chicago* relied more heavily on the fact that the statutes allowed the law to be arbitrarily enforced and in that way distinguished *Parker v. Levy*. *See* 461 U.S. at 358 ftn. 8; 527 U.S. at 52, 56.

Finally, *Parker v. Levy* applies in circumstances where the challenged statute, as authoritatively construed, contains some standards that can be used to determine whether conduct is proscribed or not. It does not apply when the challenged statute contains no standards at all. The "substantial number" provision in Tenn. Code Ann. § 68-11-201(3) is so nebulous and ill-defined that it provides no notice at all as a practical matter.

The State argues that in an appearance before the Health Facilities Commission the lawyer representing Drs. Adams and Boyle conceded that they knew a substantial number of abortions were being performed at the Welshwood facility. But this statement does not amount to an admission that they knew their activities were in violation of the statute. The physicians were seeking a CON, not because they understood that the statute required them to, but because the state officials told them they needed to. Dr. Boyle continued to insist that he did not have to have an ASTC license to perform gynecology services including first trimester abortions in his office.

Even if the statements of the lawyer before the Health Facilities Commission could be construed as concessions that Drs. Adams and Boyle understood that the statute applied to their activities, those statements can be attributed only to Drs. Adams and Boyle. The lawyer was not speaking for the other defendants, and so the concession cannot reasonably be attributed to them.

We believe that these defendants have standing to challenge the statute on the vagueness ground. We also believe the statute is unconstitutional because it fails to give fair notice of what it requires and because it encourages arbitrary and discriminatory enforcement.

**IV.**

### THE STATUTE'S EFFECT ON FUNDAMENTAL RIGHTS

In *Planned Parenthood of Middle Tennessee v. Sundquist*, 38 S.W.3d 1 (Tenn. 2000), the court held that a woman's right to terminate her pregnancy is a vital part of the right of privacy guaranteed in the Tennessee Constitution. Accordingly, the statutes regulating this right must be subjected to a strict scrutiny analysis, and must be narrowly tailored to achieve a compelling state interest. *Id.* The State argues, however, that this statute does not purport to regulate abortions; it attempts to regulate the facilities where abortions are performed; and, in any event, the Welshwood facility is a place devoted primarily to the performance of surgical procedures. Therefore, it fits the ASTC definition under the first part of the subsection. *See Marcowitz v. Department of Public Health*, 435 N.E.2d 1291 (Ill. App. 1982).

In focusing on the doctors and the facilities in which they work, the State argues for the more deferential rational basis test rather than the strict scrutiny the statute must undergo when considered as a regulation on a woman's right to an abortion. We think, however, that the State's argument would require us to read out of the statute the references to abortions and to ignore the fact that the statute seems to be aimed primarily at facilities where abortions are performed. As we have pointed out, the performance of even one abortion makes a facility an ASTC, unless the facility is a private doctor or dentists' office. In that case, any number of surgical procedures may be performed there so long as the procedures do not include a substantial number of abortions. When that invisible threshold is crossed, the State insists on deciding if the facility is needed and on what terms it should be allowed to operate.

Our Supreme Court applied the strict scrutiny test to a statute that required all second trimester abortions to be performed in a hospital. Although the court recognized that the State has a compelling interest in maternal health from the beginning of pregnancy, the second trimester hospitalization requirement was not narrowly tailored to further that interest. *Planned Parenthood of Middle Tennessee v. Sundquist*, 38 S.W.3d 1, 18 (Tenn. 2000). Other courts have considered statutes similar to this one, and have found that they impose burdens on exercising the right to an abortion that the State has to justify by important state health objectives. In *Ragsdale v. Turnock*, 841 F.2d 1358 (7th Cir. 1988), the court noted how the statute seemed to run counter to the State's interest in preserving a woman's health:

> To the extent that there is any basis for distinguishing between a doctor who occasionally performs an abortion in his office and one whose practice is primarily devoted to such procedures, the regulations appear to run contrary to sound health policy.

841 F.2d at 1371.

In *Planned Parenthood of Greater Iowa v. Atchison*, 126 F.3d 1042 (8th Cir. 1997), the court said, "where a requirement serves no purpose other than to make abortions more difficult, it strikes at the heart of a protected right, and is an unconstitutional burden on that right." *Id.* At 1049.

There is evidence in the record showing that first trimester abortions are less likely to result in complications than many other surgical procedures that are routinely performed in doctor's offices. Loop electrical excision procedures, regular diagnostic D & C's, hysteroscopy, diagnostic laparoscopy, genetic amniocentesis and laser procedures all pose risks to women equal to or greater than first trimester abortions. A tonsillectomy carries a risk of death twice as high as that of a legal abortion. The proof would justify a conclusion that there is no medical justification for treating abortions differently from other medical procedures of similar complexity and risk.

The proof with respect to the actual burden on a woman's right to an abortion is sketchy. But the facts of this case demonstrate how the statute impacts the availability of abortions. The attempts to comply with the statute have already cost the defendants in excess of $15,000 and that does not include the improvements to the physical facilities that the State insists on as a condition to issuing the license. These costs will undoubtedly be passed on to the patients of the Women's Center. The deterrent effect of the statute on the availability of abortions cannot be said to be <u>de minimus</u>. *See Ragsdale v. Turnock*, 841 F.2d 1358, 1371 (7th Cir. 1988). Therefore, we conclude that the statute adversely impacts a constitutionally protected right without a compelling state reason to justify it. *See Planned Parenthood of Middle Tennessee v. Sundquist*, 38 S.W.3d 1 (Tenn. 2000). Consequently, it cannot be enforced.

## V.
### CONTEMPT

Ordinarily if a court issues an injunction, the parties enjoined must obey it, even if they believe the statute on which the injunction was based is unconstitutional. This is called the Collateral Bar Rule. *See Howat v. Kansas,* 258 U.S. 181 (1922). Thus, even if the injunction was improvidently granted, the order must be obeyed, and disobedience of the injunction may be punished. *Walker v. City of Birmingham*, 388 U.S. 307 (1967).

This rule, however, does not apply to civil contempt. In *United States v. United Mine Workers of America*, 330 U.S. 258 (1947), the Court said "the right to remedial relief falls with an injunction which events prove was erroneously issued." The Court reasoned that since the civil contempt sanction is for the benefit of the other party, a plaintiff was not entitled to profit from an order that is subsequently reversed. Apparently this question has not been decided before in Tennessee, but other courts have followed the rule laid down in *Mine Workers*. In *Cliett v. Hammonds*, 305 F.2d 565, 570 (C.A. 5th Cir. Tex. 1962), the Court said, "In contrast, civil contempt falls with the order if it turns out to have been erroneously or wrongfully issued." Therefore, the civil fines imposed along with the attorneys' fees awarded for violating the injunction in this case are reversed.

## VI.

We declare the statute unconstitutional on the ground that it is an undue burden on a woman's right to privacy. We therefore reverse the judgment of the court below and remand the case

to the trial court for any further proceedings that may become necessary.  Tax the costs on appeal to the State.

_____
BEN H. CANTRELL, PRESIDING JUDGE, M.S.