

# SUPREME COURT OF MISSOURI
## en banc

STATE OF MISSOURI,              )      *Opinion issued August 23, 2016*

                            )

            Respondent,     )

                            )

v.                              )      No. SC95221

                            )

ROSCOE R. MEEKS,          )

                            )

           Appellant.      )

## APPEAL FROM THE CIRCUIT COURT OF THE CITY OF ST. LOUIS
The Honorable Margaret M. Neill, Judge

Roscoe Meeks was tried on charges of first-degree assault and armed criminal action. Following voir dire, Meeks challenged one of the prosecutor's peremptory strikes under *Batson v. Kentucky*, 476 U.S. 79 (1986). The trial court overruled this challenge, the case went to trial, and the jury found Meeks guilty on both counts. On appeal, Meeks argues that the trial court erred in denying his *Batson* challenge. This Court has jurisdiction. Mo. Const. art. V, § 10. Because the prosecutor failed to offer a race-neutral explanation for the strike, *Batson* requires that Meeks' convictions be vacated and his case remanded.

## I. Background

### A. Factual Allegations

Meeks' alleged victim ("Victim") is a Mexican native. At the time of alleged crime, Victim was living in the City of St. Louis in an apartment he shared with two roommates ("Roommates"). On the morning of July 4, 2012, Roommates invited Victim to visit friends in the apartment next door. Roommates left the apartment and waited outside for Victim to join them. While they waited, a man (later identified as Meeks) approached them and said he was looking for the man who took his girlfriend.

When Victim stepped out of the apartment carrying a can of beer, Meeks accosted him and said Victim was the man he was looking for. Victim said he did not know who Meeks was looking for and turned to walk away. Meeks then took a gun from behind his back and pointed it at the back of Victim's head. Seeing Meeks' gun, Roommates ran back into the apartment. This alerted Victim, who turned and tried to take the gun away from Meeks. During the struggle, Meeks shot Victim in the lower abdomen. As Meeks was preparing to shoot again, Victim threw the beer can at him and tried to get away. Meeks then shot Victim a second time and fled the scene.

Police interviewed several witnesses at the scene who gave a description of Victim's assailant. These witnesses also led police to a young woman ("CC"), who had been Meeks' girlfriend and who had spent time at Victim's apartment complex because she had friends who lived there. When the police relayed the witnesses' description of Victim's assailant to CC, she agreed that it described Meeks. Following Meeks' arrest, police conducted an in-person lineup in which both Victim and one of the Roommates

were able to identify Meeks. Meeks was charged with one count of assault in the first degree under section 565.050[1] and one count of armed criminal action under section 571.015.

### B.    Voir Dire

After the prosecutor concluded her voir dire of the venire,[2] defense counsel asked whether anyone would have difficulty presuming that Meeks was innocent. Venireperson A responded:

> [VENIREPERSON A]: Statistically speaking, we live in the seventh most dangerous city in the United States. And I hate to go into race here. But statistically, we're in St. Louis; he's black. There's more into it, but I don't know those facts. But it's more than likely he did something. I'm not saying – what's the word. It's more likely he's guilty.
>
> ….
>
> However, I personally don't believe there's evidence backing that up. There is no weapon, there is no –
>
> [DEFENSE COUNSEL]: You don't know. We haven't gotten into the evidence yet.
>
> ….
>
> And I don't want to open a can of worms the Judge doesn't want to open at ten to five with a few things said there. But does anyone share any of those sentiments, or is everyone able to do what the Judge is asking of them and required in the instruction and presume that [Meeks] is innocent because you haven't heard any evidence yet? Is everyone able to do that? [No responses indicated.] All right. Thank you.

At the conclusion of voir dire, the venire was excused and the trial court heard motions to strike for cause. Among other motions, the prosecutor moved to strike

---

[1]  Unless otherwise noted, all statutory references are to RSMo 2000.

[2]  The venire consisted of 33 white venirepersons, 12 African-American venirepersons, and three venirepersons who declined to state their race.

3

Venireperson A.  Defense counsel did not object, and the motion was sustained.  Later, in proceedings held off the record, the prosecutor and defense counsel made their peremptory strikes.

### C.    Meeks' *Batson* Challenge

After the prosecutor and defense counsel announced their peremptory strikes,[3] the trial court went back on the record to hear Meeks' *Batson* challenge.

> THE COURT: Go ahead.  [Defense counsel,] you indicated you have a *Batson* motion?
>
> [DEFENSE COUNSEL]: Yes, your Honor.  The State is moving to strike [Venireperson C.]
>
> THE COURT: Okay.
>
> [DEFENSE COUNSEL]: And it just appeared to me that there were similarly situated individuals who also only said what they do for work.  [Venireperson W] sitting behind her [and Venireperson N].

The trial court then asked the prosecutor to respond:

> [PROSECUTOR]: The reason I struck [Venireperson C] is that when [Venireperson A] made very racist statements in the box, there was a huge outcry behind me.  I struck [Venireperson H]; I've struck [Venireperson C].  The rest of the row was struck already for cause.  That leaves [Venireperson D], who I could pretty much place my bets on the defense will likely strike her.  So to make sure I don't start out the case where there is a person of Mexican descent and African-American descent upset about racial issues, I feel better if no one in that row directly behind me is

---

[3]  In a felony trial, both the state and the defense are entitled to six peremptory challenges, plus an additional peremptory challenge for use only against the alternate juror pool.  §§ 494.480, 494.485.  The state must exercise its peremptory strikes first, and then the defendant exercises his.  § 494.480.4.  On appeal, the parties stipulate that the prosecutor exercised three peremptory strikes against white venirepersons, three peremptory strikes against African-American venirepersons, and one strike of a venireperson in the alternate juror pool who declined to state his race.  Defense counsel exercised six peremptory strikes against white venirepersons, and one strike against a white venireperson in the alternate juror pool.

serving. So I made my bets the defense is more likely to strike [Venireperson D] than [Venireperson C], and I chose [Venireperson C].

THE COURT: Well, the Court will agree that [Venireperson A's] statements were definitely racist, and the Court finds that the State's reasoning for striking [Venireperson H] and [Venireperson C] are racially neutral. Because that what [Venireperson A] had to say was quite offensive to the Court and I'm sure everyone else in the courtroom. Did you have a *Batson* motion on [Venireperson H]? I guess not.

[DEFENSE COUNSEL]: No, your Honor. I didn't know when that happened exactly who expressed some sort of disgust. I think like ten people in the courtroom made a gasp when that happened. It was hard to pinpoint it was [Venireperson C].

[PROSECUTOR]: I would agree most of the courtroom gasped. There was someone directly behind me who yelled, "let's open that can," and it was a woman's voice. But I didn't want to spin around, and the statement was over. And there's a difference between being offended, which I think we all were, most of the courtroom gasped, including my table, and a difference of yelling that and interjecting that into a case. And I feel like, "let's open that can" is different than just being offended.

THE COURT: Anything further?

[DEFENSE COUNSEL]: No, your Honor, that was is [sic] it.

THE COURT: All right.

Thereafter, the trial court dismissed the remainder of the venire, and the jury was sworn and seated. The jury consisted of ten white jurors, one African-American juror, and one juror who declined to state his race. The alternate juror was African-American. Ultimately, this jury found Meeks guilty on both counts.

## II.    Analysis

In his first point on appeal, Meeks claims that the trial court clearly erred in denying his *Batson* challenge because the prosecutor failed to offer a race-neutral

5

explanation for striking Venireperson C. The Court need not address Meeks' other two points on appeal because this point is dispositive.

### A. Standard of Review

In reviewing a trial court's findings on a *Batson* challenge, the standard of review is for clear error. *State v. Marlowe*, 89 S.W.3d 464, 470 (Mo. banc 2002). The trial court's findings are clearly erroneous if "the reviewing court is left with the definite and firm conviction that a mistake has been made." *State v. Bateman*, 318 S.W.3d 681, 687 (Mo. banc 2010). "The trial court's findings on a *Batson* challenge will be set aside if they are clearly erroneous …." *State v. McFadden*, 216 S.W.3d 673, 675 (Mo. banc 2007).[4]

---

[4] Disparate treatment of similarly situated jurors is a highly relevant consideration in determining whether a defendant has carried his or her burden in step three to show that the prosecutor's race-neutral explanation for a strike was pretextual, and the weight that a trial court gives such evidence in a particular case is entitled to some deference on appeal. But step two is very different. Disparate treatment plays no role in determining whether the prosecutor has carried the burden under step two to provide a reasonably specific and clear race-neutral explanation for the strike. *See Hernandez v. New York*, 500 U.S. 352, 362 (1991) ("disparate impact should be given appropriate weight in determining whether the prosecutor acted with a forbidden intent, but it will not be conclusive in the preliminary race-neutrality step of the *Batson* inquiry"); *see also State v. Carter*, 415 S.W.3d 685, 689 (Mo. banc 2013) ("At [the second] stage, the proffered explanation will be deemed race-neutral if it is not inherently discriminatory, even if it has a disparate impact on venirepersons of a particular race group."). As a result, even though appellate courts normally will defer to a trial court's determination under step three as to whether the prosecutor's objectively race-neutral explanations were pretextual because that decision will be based on an assessment of the credibility of the prosecutor's explanation and the inferences to be drawn from disparate treatment of similarly situated venirepersons, *Hernandez*, 500 U.S. at 365, an appellate court need not give such deference to a trial court's determination under step two on the question of whether the prosecutor satisfied the burden to offer an objectively race-neutral explanation. *Id*. at 359 ("In evaluating the race neutrality of an attorney's explanation, a court must determine whether, assuming the proffered reasons for peremptory challenges are true, the challenges violate the Equal Protection Clause as a matter of law.").

6

### B.   The Three-Step Procedure for a *Batson* Challenge

The Equal Protection Clause in the United States Constitution prohibits parties from using a peremptory challenge to strike a potential juror on the basis of race. *State v. Carter*, 415 S.W.3d 685, 688 (Mo. banc 2013) (citing *Batson*, 476 U.S. at 89). In *Batson*, the Supreme Court described a three-step, burden-shifting process for challenging a peremptory strike on this basis. *Batson*, 476 U.S. at 96-98. The Supreme Court, however, "decline[d] … to formulate particular procedures to be followed upon a defendant's timely objection to a prosecutor's challenges." *Id.* at 99. To fill that void, this Court articulated a three-step procedure for trial courts to use in evaluating a *Batson* challenge:

> First, the defendant must raise a *Batson* challenge with regard to one or more specific venirepersons struck by the state and identify the cognizable racial group to which the venireperson or persons belong. The trial court will then require the state to come forward with reasonably specific and clear race-neutral explanations for the strike. Assuming the prosecutor is able to articulate an acceptable reason for the strike, the defendant will then need to show that the state's proffered reasons for the strikes were merely pretextual and that the strikes were racially motivated.

*State v. Parker*, 836 S.W.2d 930, 939 (Mo. banc 1992) (citations and footnote omitted).

Resolution of Meeks' appeal turns solely on the second step. The state argues that Meeks failed to satisfy the first step of the *Parker* procedure because defense counsel failed to identify Venireperson C's race. The Court need not consider this argument because the state concedes any such defect "dropped out"[5] when the prosecutor offered

---

[5]   *State v. Parker*, 836 S.W.2d 930, 938 (Mo. banc 1992) (stating that the preliminary issue of whether the defendant has satisfied step one becomes moot "[o]nce an explanation has been

7

explanations for the strike and, in any event, is now moot because Meeks and the state have stipulated on appeal that Venireperson C is African-American. Similarly, this Court need not consider whether Meeks carried his burden under the third step to show that the prosecutor's race-neutral explanation was pretextual and, therefore, that her decision to strike Venireperson C was motivated by race. The burden does not shift back to the defendant to make such a showing unless and until the prosecutor offers "reasonably specific and clear race-neutral explanations for the strike." *Id*. Because the prosecutor failed to offer such an explanation, the trial court erred in not sustaining Meeks' *Batson* challenge on that basis.

### C. The Prosecutor Failed to Offer a Race-Neutral Explanation

In reviewing whether the prosecutor's trial court explanations[6] for striking Venireperson C were sufficient to satisfy her burden under the second step of the *Parker* procedure, this Court must consider the context of those explanations. This is not so that the Court can determine whether a race-neutral explanation was genuine or pretextual, however. That is the third step. Instead, context is important in the second step solely to ensure that the explanation the prosecutor offered at trial was objectively race-neutral.

---

offered by the prosecutor or required by the court and the trial court has ruled on the ultimate question of intentional discrimination").

[6] Because the prosecutor has the burden of providing a race-neutral explanation under step two of the *Parker* procedure, trial and appellate courts may consider only the explanations actually offered by the prosecutor at trial. *State v. Bateman*, 318 S.W.3d 681, 690 (Mo. banc 2010) ("the trial or appellate court is [not] permitted to peruse the record to find legitimate reasons why the potential juror might have been stricken …. The trial and appellate courts cannot identify additional reasons why the prosecutor *could have* stricken the venireperson but rather must look at whether the reason or reasons given by the prosecutor are race-neutral ….") (emphasis in original).

*Hernandez v. New York*, 500 U.S. 352, 360 (1991) ("In evaluating the race neutrality of an attorney's explanation, a court must determine whether, assuming the proffered reasons for peremptory challenges are true, the challenges violate the Equal Protection Clause as a matter of law."); *Rice v. Collins*, 546 U.S. 333, 338 (2006) ("'The second step of this process does not demand an explanation that is persuasive, or even plausible'; so long as the reason is not inherently discriminatory, it suffices.") (quoting *Purkett v. Elem,* 514 U.S. 765, 767-768 (1995)).

Taking the explanation offered by the prosecutor in this case at face value, she was concerned that the unidentified venireperson who responded to the overtly racist remarks by Venireperson A with the statement "let's open that can" should not serve on this jury. Even though the prosecutor did not know which venireperson made this retort, she believed that it was made by a woman seated in the row directly behind the prosecutor. Only three female venirepersons remained in that row: Venireperson H (who identified herself as white); Venireperson C (who the parties stipulate is African-American); and Venireperson D (who the parties stipulate is white). By this time, the prosecutor had already used four of her six peremptory strikes. She used her fifth strike to exclude Venireperson H. The stage thus was set for the subject of Meeks' *Batson* challenge, i.e., the prosecutor's peremptory strike of Venireperson C.

The prosecutor faced a clear dilemma at this point. Two female venirepersons (i.e., Venireperson D and Venireperson C) remained in the row from which the prosecutor believed the "let's open that can" retort originated. The prosecutor wanted to ensure that **both** venirepersons were excluded from the jury, but she only had one

9

peremptory strike left with which to accomplish her goal. In other words, she could *either* (a) strike Venireperson D and rely on Meeks to use one of his peremptory challenges to strike Venireperson C *or* (b) strike Venireperson C and rely on Meeks to strike Venireperson D. She could not strike both. When the prosecutor explained how she made this choice, she stated: "So I made my bets the defense is more likely to strike [Venireperson D] than [Venireperson C], and I chose [Venireperson C]."

The trial court overruled Meeks' *Batson* challenge after concluding that "the State's reasoning for striking [Venireperson H] and [Venireperson C] are racially neutral." This was clear error because it failed to focus on the strike that Meeks actually challenged. Meeks does not challenge the prosecutor's decision to use her fifth strike to exclude Venireperson H from the jury. Instead, he challenges the prosecutor's decision to use her sixth and last strike to remove Venireperson C, and the statements offered by the prosecutor to explain *that* decision were not race neutral.

To be sure, the prosecutor's desire to exclude all of the female venirepersons in the row from which she believed the "let's open that can" retort originated would have been a sufficiently clear and race-neutral explanation if Meeks had challenged her decision to strike all three (or even the last) of Venireperson H, Venireperson C and Venireperson D. But that is not the choice the prosecutor faced, and it is not the challenge Meeks raised. Once the prosecutor used her fifth strike to exclude Venireperson H, she was left with a very different choice. To ensure that neither Venireperson C nor Venireperson D would serve on the jury, the prosecutor had to

10

choose between striking Venireperson C and striking Venireperson D,[7] and she made this choice based on which of these two venireperson she believed Meeks was more likely to strike if the prosecutor struck the other. The prosecutor failed to satisfy the second step of the *Parker* procedure because she did not offer "reasonably specific and clear race-neutral explanations for [that] strike." *Parker*, 836 S.W.2d at 939.

To explain her decision to strike Venireperson C, the prosecutor first stated: "So to make sure I don't start out the case where there is a person of Mexican descent and African-American descent upset about racial issues, I feel better if no one in that row directly behind me is serving." This might explain a decision to strike all of the female venirepersons in that row, but it fails to explain the decision the prosecutor actually made, i.e., to strike Venireperson C rather than Venireperson D. More importantly, this statement cannot satisfy the prosecutor's burden to offer a race-neutral explanation under the second step of the *Parker* procedure because the statement explicitly refers to Venireperson C's race.[8]

---

[7] Oddly, the prosecutor may never have faced this choice had she not argued successfully against Meeks' motion to strike Venireperson D before the question of peremptory strikes was reached. Though several reasonable inferences may be drawn from this, one is that the prosecutor's stated objective to exclude ***all*** of the venirepersons from the suspect row was pretextual under step three. The Court need not consider whether the trial court should have determined that the prosecutor's explanations were pretextual, however, because the Court holds that neither of her statements carried the prosecutor's burden to offer a race-neutral explanation under step two.

[8] The state argues that, when the prosecutor referred to not wanting a "person of Mexican descent and African-American descent upset about racial issues," she was referring to Victim and Meeks, respectively. This argument is not persuasive. The prosecutor made this statement in the context of a *Batson* challenge and, specifically, as part of her explanation for her decision to strike Venireperson C. There is no reason for the prosecutor to refer to Victim and Meeks in that context because the prosecutor's use of peremptory strikes could not alter Victim's ethnicity or Meeks' race, nor could such strikes have any impact on whether Victim or Meeks (or both of

11

The state argues that this Court should disregard the prosecutor's statement explicitly referring to race and ethnicity and focus, instead, on her second statement that (because the prosecutor was down to her last peremptory strike) she "made my bets the defense is more likely to strike [Venireperson D] than [Venireperson C], and I chose [Venireperson C]." Even viewed in isolation from the prosecutor's explicitly race-based rationale, as the state suggests, this statement fails to satisfy the prosecutor's burden to offer a race-neutral explanation for striking Venireperson C.

There is no explicit reference to race in the prosecutor's statement that she chose to strike Venireperson C and rely on Meeks to strike Venireperson D because she believed that Meeks would not strike Venireperson C if the prosecutor struck Venireperson D. Unlike the prosecutor's first statement, therefore, which failed to satisfy the prosecutor's burden under the second step of the *Parker* procedure because it did not offer an explanation for the strike that was objectively not based on race, the prosecutor's second statement fails because it did not offer an explanation for the strike *at all*. The statement merely attributes the prosecutor's decision (i.e., to strike Venireperson C) to a belief she formed at the same time (i.e., that Meeks would be more likely to strike Venireperson D than Venireperson C). The statement does not offer any explanation (far

_____

them) would "start out [the trial] … upset about racial issues." Instead, because the prosecutor made this statement in the context of explaining her decision to strike Venireperson C, her reference to a "person of Mexican descent and African-American descent" likely was directed at the ethnicity of Victim and the race of Venireperson C. In any event, it was the prosecutor's burden to provide "reasonably specific and clear race-neutral explanations for the strike," *Parker*, 836 S.W.2d at 939, and an explanation based explicitly on *someone's race* does not satisfy this standard merely because it is ambiguous as to *which person's race* the prosecutor was focused on in deciding whom to strike.

12

less a race-neutral explanation) for either her decision to strike Venireperson C or her belief that Meeks would not do so.

For all the prosecutor's "explanation" tells us, she may have based her belief that Meeks would be more likely to strike Venireperson D than Venireperson C on the fact that both Meeks and Venireperson C are African-American. Or the prosecutor may have based this belief on the fact that Meeks previously had tried (and failed) to have Venireperson D stricken for cause, or some other consideration. Because the prosecutor offered no explanation for *why* she believed Meeks would strike Venireperson D but not Venireperson C, her statement that she based her decision to strike Venireperson C on that belief explains nothing.

If a prosecutor can satisfy the burden under the second step merely by "explaining" that the decision to strike a vernireperson was based on some other belief or conclusion *without* offering any explanation for that other belief or conclusion, then the second step would serve no purpose. A prosecutor could respond to any *Batson* challenge merely by stating: "I decided to strike Venireperson X because I believed that was the best strategy." Such statements do not satisfy the prosecutor's burden in the second step. Instead, the prosecutor must articulate "***reasonably specific and clear*** race-neutral explanations for the strike." *Parker*, 836 S.W.2d at 939 (emphasis added). "[T]here are any number of bases on which a prosecutor reasonably may believe that it is desirable to strike a juror who is not excusable for cause. … [H]owever, the prosecutor must give a ***clear and reasonably specific*** explanation of his legitimate reasons for

13

exercising the challenges." *Batson*, 476 U.S. at 98 n.20 (emphasis added) (quotation marks omitted).

Here, the prosecutor failed to offer a race-neutral explanation for her decision to strike Venireperson C. Even though the prosecutor stated she struck Venireperson C because she believed Meeks would not do so, this statement does not explain her basis for that belief. If her belief was based on Venireperson C's race, then the prosecutor's decision to strike Venireperson C also was based on race. Because the prosecutor failed to offer any explanation (let alone a race-neutral explanation) for her belief that Meeks was more likely to strike Venireperson D than Venireperson C, the trial court clearly erred in determining that the prosecutor satisfied her burden under the second *Parker* step to offer a race-neutral explanation for her decision to strike Venireperson C. In light of this failure and the prosecutor's other explanation based explicitly on race and ethnicity (whatever its subjective meaning), Meeks' *Batson* challenge should have been sustained.[9]

## III. Conclusion

For the reasons set forth above, the trial court clearly erred in denying Meeks' *Batson* challenge. Because the prosecutor failed to offer a "reasonably specific and clear

---

[9] The state relies on *Howard v. Senkowski*, 986 F.2d 24 (2d Cir. 1993), to argue that this Court should apply a dual-motivation analysis if it determines that one of the prosecutor's explanations was race-neutral but the other was not. This Court expressly declined to follow this approach in *State v. McFadden*, 191 S.W.3d 648, 657 (Mo. banc 2006) ("To excuse such obvious prejudice because the challenged party can also articulate nondiscriminatory reasons for the peremptory strike would erode what little protection *Batson* provides against discrimination in jury selection."). Moreover, there is no occasion to reconsider this question in the present case because the Court holds that **neither** of the explanations the prosecutor offered in the trial court was sufficient to satisfy her burden under the second step of the *Parker* procedure.

14

race-neutral explanation[] for the strike," *Parker*, 836 S.W.2d at 939, Meeks' convictions must be vacated and the case remanded.

_____
Paul C. Wilson, Judge

All concur.