**STATE of Missouri, Respondent,**

v.

**Lawrence MOSELY, Appellant.**

**WD 79511**

Missouri Court of Appeals, Western District.

OPINION FILED: June 27, 2017

---

Shaun Mackelprang, Jefferson City, MO, for respondent.

Ellen H. Flottman, Columbia, MO, for appellant.

Before Division Three: Anthony Rex Gabbert, Presiding Judge, Victor C. Howard, Judge and Cynthia L. Martin, Judge

Cynthia L. Martin, Judge

Lawrence Mosely ("Mosely") appeals his convictions of two counts of distribution of a controlled substance. Mosely argues that the State's peremptory strike of two African-American members of a jury venire panel violated *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986). Because the State's explanation for exercising a peremptory strike on one of the African-American venirepersons was not race neutral, we reverse and remand.

## Factual and Procedural Background

Mosely was charged with and convicted of two counts of distribution of a controlled substance in the Circuit Court of Cole County.[1] Mosely does not challenge the sufficiency of the evidence to support his convictions, but he notes that his arrest was based on line-up identifications by an

---

1. Mosely was acquitted of a third charge, unlawful use of a weapon.

undercover officer and a confidential informant nearly three years after the undercover drug buys giving rise to his charges. Both witnesses also identified Mosely at trial. The undercover officer testified that he had been specially trained in cross-racial identification and that he was 100 percent certain of his identification of Mosely.

Mosely, who is an African-American, challenges the fact that he was convicted by an all-white jury. The State used peremptory strikes to remove venirepersons 16 and 31, two African-American venirepersons who would have served on the jury. The State also used a peremptory strike to remove venireperson 37, an African-American venireperson who would have served as an alternate juror. As a result of the State's peremptory strikes, all African-Americans who remained on the venire after strikes for cause were removed from the venire. Mosely timely objected that the State's peremptory strikes violated *Batson*. The trial court overruled Mosely's *Batson* challenges. Additional facts will be addressed in our analysis of Mosely's claim on appeal.

## Analysis

In his single point on appeal, Mosely argues that his rights to equal protection under the law as guaranteed by the Fourteenth Amendment to the United States Constitution and Article I, section 2 of the Missouri Constitution were violated when the State struck venirepersons 16 and 31 from the venire because the State's explanations for the strikes were not race neutral or were pretext for a discriminatory purpose.[2] The trial court overruled Mosely's *Batson* challenge to the strike of both potential jurors. We review the trial

court's findings on a *Batson* challenge for clear error. *State v. Meeks*, 495 S.W.3d 168, 172 (Mo. banc 2016). A trial court commits clear error if " 'the reviewing court is left with the definite and firm conviction that a mistake has been made.' " *Id.* (quoting *State v. Bateman*, 318 S.W.3d 681, 687 (Mo. banc 2010)).

■ "The Equal Protection Clause in the United States Constitution prohibits parties from using a peremptory challenge to strike a potential juror on the basis of race." *Id.* (citing *Batson*, 476 U.S. at 89, 106 S.Ct. 1712; *State v. Carter*, 415 S.W.3d 685, 688 (Mo. banc 2013)). Our Supreme Court has articulated a three-step procedure to be followed to properly raise, and for trial courts to address, a *Batson* challenge.

"First, the defendant must raise a *Batson* challenge with regard to one or more specific venirepersons struck by the state and identify the cognizable racial group to which the venireperson or persons belong. The trial court will then require the state to come forward with reasonably specific and clear race-neutral explanations for the strike. Assuming the prosecutor is able to articulate an acceptable reason for the strike, the defendant will then need to show that the state's proffered reasons for the strikes were merely pretextual and that the strikes were racially motivated."

*Id.* at 173 (quoting *State v. Parker*, 836 S.W.2d 930, 939 (Mo. banc 1992)).

Here, there is no dispute that Mosely satisfied the first step, as he raised a *Batson* challenge after the State struck venirepersons 16 and 31 from the venire,

---

**2.** Though Mosely also raised below a *Batson* challenge to the State's peremptory strike of venireperson 37 from the alternate pool of jurors, he does not challenge that strike on appeal. No alternates ended up serving on Mosely's jury.

identifying them as African-Americans.[3]

The trial court then properly required the State to come forward with race-neutral explanations for the strikes. We address the strikes separately.

### Venireperson 16

During voir dire, defense counsel inquired of the venire as follows:

**Defense Counsel Voir Dire:** Now, I want to ask you guys about race. This is something that's very difficult to talk about, because I think nobody wants to talk about this and it's something that makes everybody feel very uncomfortable. In particular, I don't want to think of myself as being a racist. But there are certainly things in my life, times that I know I judge someone based on the color of their skin.

I'm walking home last night on a walk, getting the case ready for trial, and a gentleman's behind me. I don't know whether he's white or black, but when I turned around to look at him, if I see that he's African-American, in my mind there's that apprehension, that little bit of fear. That's something I learned from my parents, and—but it's who I am.

. . . .

Now, Mr. Mosely, in preparing for this trial, confessed to you he feels the same kind of apprehension looking around the room, there's quite a lot of white people sitting here, and I expect that he worries that he might be judged on the color of his skin. Does anybody understand where he's coming from?

**Venireperson 16:** 16

**Defense Counsel:** Ma'am, No. 16, do you mind sharing with us?

**Venireperson 16:** Well, I'm African-American, too. You shouldn't be judged by your peers, but it's predominately white in here.

**The Court:** And that's something interesting. How do you feel sitting in a room that is predominately filled with white people?

**Venireperson 16:** I grew up here, so I deal with it every day.

After Mosely raised a *Batson* challenge to the State's peremptory strike of venireperson 16, the State explained its strike as follows:

[S]he indicated clearly that she would understand the defendant's position of being prejudged ... **because of her status here** and living in the county, and the State contends that's a race-neutral reason for her strike, given her response to defense questioning.

(Emphasis added.) Mosely responded that he did not believe the explanation was race neutral. The trial court overruled Mosely's *Batson* challenge.

"In reviewing whether the [State's] trial court explanations for striking [venireperson 16] were sufficient to satisfy [its] burden under the second step of the *Parker* procedure, this Court must consider the context of those explanations." *Meeks*, 495 S.W.3d at 173. "This is not so that the Court can determine whether a race-neutral explanation was genuine or pretextual, however. That is the third step." *Id.* "Instead, context is important in the second step solely to ensure that the explanation the [State] offered at

---

**3.** The venire included venirepersons 1 through 46, with venirepersons 22 and 27 struck by agreement before voir dire began. Of the 44 venirepersons who participated in voir dire, venirepersons 1, 2, 3, 9, 18, 19, 21, 29, 42, and 45 were struck for cause. The exercise of peremptory strikes resulted in the following venirepersons serving on Mosely's jury: 6, 8, 10, 11, 17, 20, 24, 25, 26, 28, 32, and 34. Venirepersons 35 and 40 were the alternates. As a result of all strikes, all jurors and alternates were Caucasian.

trial was objectively race-neutral." *Id.* " 'The second step of this process does not demand an explanation that is persuasive, or even plausible; so long as the reason is not inherently discriminatory, it suffices.' " *Id.* at 174 (quoting *Rice v. Collins*, 546 U.S. 333, 338, 126 S.Ct. 969, 163 L.Ed.2d 824 (2006)). "A neutral explanation in the context of our analysis means an explanation based on something other than the race of the juror." *Hernandez v. New York*, 500 U.S. 352, 360, 111 S.Ct. 1859, 114 L.Ed.2d 395 (1991) (plurality opinion). "The State's explanation need only be facially race-neutral and is presumed so unless discriminatory intent is inherent within the explanation." *State v. Washington*, 288 S.W.3d 312, 315 (Mo. App. E.D. 2009) (citing *State v. Williams*, 97 S.W.3d 462, 471 (Mo. banc 2003)). That an explanation may have a racially disparate impact is relevant to the third step of the *Batson* analysis, but is "not ... conclusive in the preliminary race-neutrality step of the *Batson* inquiry." *Hernandez*, 500 U.S at 362, 111 S.Ct. 1859; *see also Washington*, 288 S.W.3d at 316 ("Even if a prosecutor's criterion might result in the disproportionate removal of a certain racial group, the disproportionate impact does not turn a prosecutor's actions into a per se violation of the equal protection clause.").

█ Applying these principles, the State's explanation for striking venireperson 16, viewed in context, was not objectively or facially race neutral. Instead, the explanation was expressly based on the race of venireperson 16. The State struck venireperson 16 because "she would understand the defendant's position of being prejudged, [ ] *because of her status here*," referring to venireperson 16's response to voir dire where she identified herself as an African-American. (Emphasis added.) The State struck venireperson 16 because of her status as an African-American. The State's explanation is thus inherently discriminatory.

In its Brief on appeal, the State argues that venireperson 16 was struck simply because she expressed sympathy with Mosely. The State argues that understanding or sympathizing with a defendant is a race-neutral reason for removing a potential juror, and that venireperson 16's reference to her race during voir dire did not transform the State's basis for striking her into a race-based reason.

We agree with the State that a potential juror's sympathy constitutes a race-neutral reason for removing the venireperson. However, the State did not tell the trial court it was striking venireperson 16 simply because she was sympathetic to Mosely. The State told the trial court it was striking venireperson 16 because she was sympathetic to Mosely *because of her status*—that is, because she was African-American. The State's reference to venireperson 16's status, or race, as the basis for its strike rendered the explanation objectively and facially not race neutral.[4]

---

4. Importantly, had the State's stated basis for striking venireperson 16 been limited to her expressed understanding of Mosely's apprehension, without connecting that understanding to her race, then the State's explanation would have been objectively race neutral. However, the State would then have been required to defend Mosely's argument about pretext under step three of the *Parker* analysis. Mosely pointed out at trial that venireperson 28, who was not struck, and who was Caucasian, agreed that African-Americans might feel judged being tried in a predominately white courtroom. That fact, coupled with the State's removal of all African-Americans from the venire, would have been relevant considerations in determining pretext. *See, e.g., State v. McFadden*, 216 S.W.3d 673, 677 (Mo. banc 2007) (where Supreme Court found State's explanation that venireperson was struck because he had "crazy-looking red hair" to be race neutral, but nonetheless pretextual,

This case is indistinguishable · from *State v. Smith*, ·5 S.W.3d 595 (Mo. App. E.D. 1999). In *Smith*, the State used a peremptory strike to remove a female venireperson.[5] *Id.* at 597. When the ·strike was challenged by the defendant, the State explained that the venireperson was "41, prime age for the mother of these defendants, in addition to presently working with children." *Id.* · When challenged as pretextual, the State went on to explain: "My *biggest concern* if you look at the baby-faced defendant is that *the women are going to be the ones who hung us up on this child.*" *Id.* The trial court overruled the *Batson* challenge · and declared the State's explanation "gender neutral." *Id.* The Eastern District reversed, finding that "[t]he reasons given by the prosecutor established that her use · of the peremptory challenge to strike [the venireperson] was based upon her gender as a female." *Id.* at 597-98. The court found "the State violated *Batson's* prohibition against gender discriminatory peremptory challenges when it struck [the venireperson] and failed to provide a gender-neutral reason for the strike." *Id.* at 598.

. As in *Smith*, where the express rationale for a strike was the State's concern that a potential juror would be sympathetic *because of her gender*, here, the express rationale for striking venireperson 16 was the State's concern that she would be sympathetic *because of her· race*. In both cases, the explanation was objectively and facially not race neutral, and inherently discriminatory. The State failed to sustain its burden under step two of the *Parker*

analysis in· striking venireperson 16. The State expressly struck venireperson 16 because of her race, revealing an "assumption that African-American jurors, as a group, would be unable to impartially consider the·State's case against an African-American defendant" in violation of the equal protection clause. *Washington,* 288 S.W.3d at 315.

·The outcome in this case must be distinguished from situations where the State's explanation for a peremptory strike is not objectively or facially based on race, but nonetheless has an apparent impact on a venireperson of a particular race—a scenario that implicates the third step in the *Parker* analysis but not the·second. For example, in *State v. Rollins*, 321 S.W.3d 353, 364 (Mo. App. W.D.· 2010), a venireperson responded affirmatively to defense counsel's question during voir dire asking whether "anybody ever felt discriminated against because of their race?" The venireperson explained he felt he·had been·the subject of a discriminatory vehicle stop by the police. *Id.* The State used a peremptory strike to remove the venireperson, and when· a *Batson* challenge was raised, the State explained first that the venireperson "said that he was discriminated against by the police," and second that he "believes that the Jackson·County Prosecutor's Office treated him unfairly." *Id.* We affirmed the trial court's conclusion that the explanation was race neutral. *Id.* at 367. We observed:

[T]he State's first explanation for striking venireperson 33 was not that the venireperson was African-American,

---

where State exercised peremptory challenges to strike all African-Americans from the venire).

Because the State's explanation for striking venireperson 16 *because of her status* did not carry the State's burden to offer a·race-neutral explanation under step two, we·need not address whether the State's explanation for

striking venireperson 16 was also pretextual under step three of the *Parker·* analysis.

**5.** The rationale of·*Batson* was extended to the removal of·potential jurors based on gender in *J.E.B. v. Alabama ex rel. T.B.*, 511 U.S. 127, · 114 S.Ct. 1419, 128 L.Ed.2d 89 (1994).

but rather that he had undergone an experience that may have influenced negatively the way he perceives police officers.... [T]his is not insignificant, because one of the victims and most of the witnesses were engaged in law enforcement activities. Venirepersons of any ethnicity, language, or race are susceptible to being stricken on the ground that they had experienced discrimination by a police officer.

*Id.* We explained that arguing the explanation was not race neutral was "based strictly on the notion of disparate impact[,] ... pertinent to the inquiry related to pretext, [but] not determinative of whether the explanation is race-neutral on its face." *Id.* (citing *Hernandez*, 500 U.S. at 359-61, 111 S.Ct. 1859).

*Rollins* underscores the exceedingly narrow scope of the inquiry we are to conduct with respect to whether the State has sustained its burden to offer a race-neutral explanation for a peremptory strike. *Rollins* also underscores the difference, however, between an explanation that is facially race neutral (though race may have been mentioned by the venireperson), and an explanation that is not facially race neutral. In the former scenario, the State's burden under step two of the *Parker* analysis is sustained, and the venireperson's response is considered, if at all, in analyzing pretext under step three of the *Parker* analysis where the defendant bears the burden. In the latter scenario, the State's facial reliance on race as the basis to remove a potential juror reveals an inherent discriminatory intent, such that the State fails to sustain its burden under step two of the *Parker* analysis, rendering it a discussion of pretext unnecessary.

Similarly distinguishable from the instant case is *State v. Wiley*, 337 S.W.3d 41 (Mo. App. S.D. 2011). In *Wiley*, the State asked in voir dire "whether words or insults could justify use of physical force against another." *Id.* at 46. A venireperson responded that "it depends on what the words are." *Id.* When asked to explain, the venireperson stated that "call[ing] [him] on [his] race" would justify the use of force. *Id.* The State exercised a peremptory strike to remove the venireperson and explained after a *Batson* challenge that:

> [T]he victim in this case is Caucasian. There may be some evidence in this case that a racial slur may have been made during the course of some of these events. [The venireperson] indicated that he thought that words alone in certain circumstances would be enough to justify violence ... which is contrary to the instructions and the law.

*Id.* The trial court found the explanation to be race neutral and not pretextual. *Id.* The Southern District affirmed. *Id.* at 47. As in *Rollins*, the stated explanation was race neutral. The State did not state that it was striking the venireperson because he was African-American, but because his opinion that words about race would justify violence, contrary to the law that would be instructed in that case. As in *Rollins*, the explanation was facially race neutral because it did not objectively or facially express reliance on the race of the venireperson. *Id.*

The trial court committed clear error by concluding that the State's explanation for exercising a peremptory strike to remove venireperson 16 was race neutral.[6] We are therefore required to reverse Mosely's judgment of conviction and sentence, and to remand this matter for a new trial.

---

**6.** Notably, the explanation the State offered to defend its peremptory strike of venireperson 16 was unsuccessfully offered by the State in an attempt to strike venireperson 16 for

cause. Though "the reason offered by the [State] for a peremptory strike need not rise to the level of a challenge for cause, *Batson*, 476 U.S. at 97, 106 S.Ct. 1712, the fact that it

### *Venireperson 31*

Because the trial court's clear error in overruling Mosely's *Batson* challenge with respect to venireperson 16 requires us to reverse and remand, we need not address Mosely's *Batson* challenge to the peremptory strike of venireperson 31.[7]

### Conclusion

The trial court's judgment of conviction and sentence is reversed. This matter is remanded for a new trial.

All concur

corresponds to a valid for-cause challenge will demonstrate its race-neutral character." *Hernandez*, 500 U.S. at 362-63, 111 S.Ct. 1859. Conversely, "[i]f the explanation is not race neutral for the prosecutor, it is no more so for the trial judge." *Id.* at 362, 111 S.Ct. 1859. When the State unsuccessfully attempted to strike venireperson 16 for cause, it was keenly aware that Mosely challenged its explanation as not race neutral. The State's subsequent use of the same explanation, which referenced venireperson 16's status (race) as the reason for her sympathies and thus for her strike, is difficult to explain.

7. The State's explanation for striking venireperson 31 was that he "was the only one that

stated ... everybody's memory fades, and he raised his paddle also on the judgment of a person just because of their skin color." The State's explanations for striking venireperson 31 were facially race neutral. The State's reference to the fact that venireperson 31 raised his paddle in response to a question about judging a person because of skin color did not in any manner comment or rely on venireperson 31's skin color or status. *See Wiley*, 337 S.W.3d at 46-47. Because we need not reach the issue, we express no opinion as to whether Mosely sustained his burden to establish that the strike of venireperson 31 was pretextual.