

# In the Missouri Court of Appeals
# Eastern District

DIVISION ONE

ASSURANCE GENERAL CONTRACTING, LLC, ) No. ED107390
)
    Appellant, ) Appeal from the Circuit Court
) of St. Louis County
vs. )
) Honorable Ellen H. Ribaudo
HELAL EKRAMUDDIN, ET AL., )
)
    Respondents/Cross-Appellants. ) Filed: April 14, 2020

Assurance General Contracting, LLC, the plaintiff in this case, ("AGC/Appellant")

appeals, and HK Internal Medicine Associates, LLC ("Respondent" or "HK") cross-appeals,

from the trial court's amended judgment, entered after a jury verdict awarding no money to

AGC/Appellant but the trial court awarding pre-judgment interest to AGC/Appellant in the

amount of $6,894.24. We affirm in part and reverse the award of pre-judgment interest.

## I. Background

Respondent HK owns an internal medicine office building located at 2870 Netherton

Drive, St. Louis, Missouri 63136 ("the Building"). Dr. Helal Ekramuddin ("Doctor") is a

member and owner of HK and practices internal medicine in the Building. Doctor originally

contacted AGC/Appellant, a general contractor, to inspect and possibly repair the Building's

leaking roof. AGC/Appellant inspected the roof and concluded that the leaking roof was caused

by hail damage. AGC/Appellant, through its principal, Ladarryl Brown ("Brown"), suggested to Doctor that the Building's insurance company, not HK or Doctor, might be liable to pay for the repairs. Brown also suggested to Doctor that the entire roof of the Building should be replaced rather than just repaired. AGC/Appellant did not inform HK that some person or entity other than AGC/Appellant would be engaged to do the roof replacement itself.

AGC/Appellant presented a "work authorization" to Doctor by which permission was given to AGC/Appellant to communicate with American Family Insurance Company, the insurance carrier for the Building. This was to enable AGC/Appellant to be paid for its work by the ultimate source of payment, the insurance company. AGC/Appellant explained to Doctor that the insurance company for the Building would be responsible for paying for the repair work because the hail damage was covered by the insurance policy.

The first step in the repair process was to do "mitigation" work, which included drying out the inside of the Building. The repair work took a long time. Doctor and his staff voiced concerns to AGC/Appellant's member, Brown, about the delay and the fact that the roof was still leaking even after several months of AGC/Appellant being on the job. Doctor said the repair work was taking too long with little results and ultimately asked the insurance company if a different contractor could be hired to fix the roof. The insurance company agreed and a new contractor, Atlas Roofing ("Atlas"), was approved to actually complete the roof repairs and to replace the roof with a new one. Atlas fixed the roof and found mold in the interior of the Building due to the amount of time the roof continued to leak without being repaired. Atlas engaged a mold remediation company to remove the mold.

For payment, AGC/Appellant submitted its billing directly to the insurance company, not to HK. AGC/Appellant never sent an invoice to Respondent or Doctor. The insurance company

2

would receive and review AGC/Appellant's bills and send a check to Respondent without any advance notice. Once approved, the insurance company would issue a check payable jointly to Respondent and to the mortgage company who held a deed of trust on the Building. Doctor would endorse the check on behalf of Respondent and would mail the check to the mortgage company in order for the mortgage company to also endorse the check. After endorsing the check, the mortgage company would send the check back to Respondent, who would then deposit the check into Respondent's checking account. Finally, Respondent issued a check to AGC/Appellant for payment.

At many points during the course of the parties' relationship, Respondent was dissatisfied with the lack of work being done by AGC/Appellant and the delay in the work. Respondent therefore held onto approximately $30,000 that the insurance company had previously issued. Just before trial, Respondent, through its counsel, sent to AGC/Appellant's counsel a check for $30,000 payable to AGC/Appellant. AGC/Appellant accepted the check without explanation of what it represented, although it was alleged that the check represented funds that came from American Family Insurance Company.

ACG/Appellant originally sued Doctor for quantum meruit, breach of contract and unjust enrichment. Shortly before trial, AGC/Appellant amended its Petition to add HK as a party defendant. HK and Doctor filed counterclaims against AGC/Appellant for breach of contract as well. A trial took place on August 27, 28, and 29, 2018. During AGC/Appellant's case-in-chief, Brown testified about three potential other projects that AGC/Appellant was lined up to do, and that his contracting company would not be able to take them on because it was doing the roof work on the building for Respondent. Therefore, AGC/Appellant would not be able to earn a profit on those other jobs. Brown attempted to testify as to the profit and/or revenue that

3

AGC/Appellant would have earned if AGC/Appellant were able to perform the work on the three other projects, but Respondent objected and the trial court sustained the objections.

Counsel for AGC/Appellant admitted that there were no estimates that had even been prepared with respect to the three other projects and argued about what Brown may be able to testify about in order to lay a proper foundation to admit evidence of lost profits from the other jobs. AGC/Appellant's counsel made an offer of proof outside of the jury's presence by argument, but Respondent objected to the lost profits relating to the three other contracts and the trial court sustained Respondent's objections. AGC/Appellant did not submit any other evidence or argument during its offer of proof.

After the evidence was presented at trial, AGC/Appellant decided to submit to the jury one claim for breach of contract against Respondent only and not against Doctor. This was the only claim submitted to the jury for consideration. The jury returned a verdict in favor of Respondent and against AGC/Appellant on AGC/Appellant's breach of contract claim. The jury entered its original judgment on the verdict on September 4, 2018, awarding nothing to AGC/Appellant. AGC/Appellant filed a motion for a new trial and/or to amend the judgment, which the trial court granted in part by entering a first "Amended Judgment" dated November 29, 2018, awarding prejudgment interest against "Defendant" Respondent in the amount of $6,894.24 pursuant to Section 408.020, RSMo. This amended judgment did not specify which defendant was liable to pay the pre-judgment interest, Doctor or Respondent.

Respondent filed a motion to amend the Amended Judgment by challenging the award of pre-judgment interest in general, as well as asking the trial court to specify which "defendant" party was liable to pay the interest. On January 3, 2019, the trial court entered an "Order and Judgment" amending or clarifying the Amended Judgment of November 29 by specifying that

4

the trial court's award of pre-judgment interest as expressed in the Amended Judgment was directed against Respondent only, and not against Doctor individually. The trial court otherwise denied Respondent's motion to amend the Amended Judgment.

AGC/Appellant filed its timely notice of appeal on December 5, 2018. Respondent timely filed its Notice of Cross-Appeal on January 3, 2019, with respect to the trial court's award of pre-judgment interest against Respondent. This Court, on its own motion dated January 11, 2019, consolidated the primary appeal with the cross-appeal per Order.

Batson Challenge

During jury selection, AGC/Appellant raised a Batson challenge with respect to a potential juror, Venireperson No. 20, who was African-American. The trial court asked Respondent to provide a race-neutral reason for the peremptory strike, and Respondent provided the reasons that his experience as a plaintiff in a prior lawsuit would make him more likely to associate with the plaintiff in this case, he was an out-of-state person from the state of Wisconsin, and he had affiliation with law enforcement personnel. The trial court corrected the attorney that the venireperson was actually a defendant and then found the only race neutral reason given was that he was a previous law enforcement officer. Based on that, the trial court overruled the Batson challenge and granted the peremptory request regarding Venireperson No. 20. Respondent argued then that there were similarly situated people that were not African American who were law enforcement officers and therefore did not believe this was sufficiently race neutral. The trial court denied the Batson challenge raised by AGC/Appellant.

## II. Discussion

AGC/Appellant raises two points on appeal. First, AGC/Appellant alleges the trial court erred in overruling its challenge to Respondent's peremptory strike of a juror because HK did not

advance a race neutral reason for striking the juror. AGC/Appellant argues the only reason given for striking the juror was that the juror was a retired law enforcement officer, and that this case was a breach of contract case and no reason was given why that would matter.

Second, AGC/Appellant alleges the trial court erred in prohibiting it from testifying about lost profits because the trial court sustained objections to preliminary testimony that did not matter. AGC/Appellant claims that it was merely trying to testify about lost profits, which the trial court did not allow by prohibiting discussion of contracts and stating the evidence was not sufficiently detailed.

On cross-appeal, Respondent alleges the trial court erred in awarding AGC/Appellant pre-judgment interest after AGC/Appellant lost the trial and was awarded no money damages. Respondent contends that AGC/Appellant failed to properly plead for interest in its petition and failed to present evidence to the trial court to award prejudgment interest pursuant to Section 408.020, RSMo. in that AGC/Appellant never made demand on Respondent for payment and there was no liquidated sum on which interest could attach.

### Point I:  Batson Challenge

A.  Standard of Review

The standard of review of a trial court's findings on a <u>Batson</u> challenge is clear error. <u>State v. Meeks</u>, 495 S.W.3d 168, 172 (Mo. banc 2016).  "The trial court's findings are clearly erroneous if the reviewing court is left with a definite and firm conviction that a mistake has been made." <u>Id.</u> (internal quotation marks omitted).  A trial court's determination that a peremptory strike was made on racially neutral grounds is entitled to great deference on appeal. <u>State v. Cole</u>, 71 S.W.3d 163, 172 (Mo. banc 2002).  "Further, because of the subjective nature of peremptory challenges we place great reliance in the trial court's judgment when it comes to

6

assessing the legitimacy of the [striking party's] explanation." State v. Morrow, 968 S.W.2d 100, 114 (Mo. banc 1998) (internal quotation marks omitted).

B. Analysis

"The Equal Protection Clause in the United States Constitution prohibits parties from using a peremptory challenge to strike a potential juror on the basis of race." Meeks, 495 S.W.3d at 172. "In Batson, the Supreme Court described a three-step, burden-shifting process for challenging a peremptory strike on this basis." Id. (citing Batson v. Kentucky, 476 U.S. 79, 96-98 (1986)). "The Supreme Court, however, 'decline[d] . . . to formulate particular procedures to be followed upon a defendant's timely objection to a prosecutor's challenges.'" Id. (quoting Batson, 476 U.S. at 99). To fill that void, the Missouri Supreme Court articulated a three-step procedure for trial courts to use in evaluating a Batson challenge. Id. at 173. First, the opponent of the peremptory strike must raise a Batson challenge with regard to one or more specific venirepersons struck and identify the cognizable racial group to which the venireperson or persons belong. State v. Parker, 836 S.W.2d 930, 933 (Mo. banc 1992). This party opponent of the peremptory challenge must make out a prima facie case of race discrimination. Id. Then the burden shifts to the party making the peremptory strike to provide a specific and race-neutral explanation for making the strike. State v. Rashad, 484 S.W.3d 849, 853 (Mo. App. E.D. 2016). We require the proponent's explanation be more than a mere denial of discriminatory purpose. State v. McFadden, 216 S.W.3d 673, 675 (Mo. banc 2007). However, the proffered explanation will be deemed race-neutral if it is not inherently discriminatory. State v. Marlowe, 89 S.W.3d 464, 468-69 (Mo. banc 2002). Third, if the second step is satisfied, the burden shifts back to the party raising the Batson challenge to prove that the proffered explanation was pretextual and that the strike was truly motivated by racial animus. State v. Murray, 428 S.W.3d 705, 711 (Mo. App. E.D. 2014).

7

AGC/Appellant argues that the trial court erred in allowing a peremptory strike by HK of Venireperson No. 20. It contends that its sole principal, Brown, is African American, and HK struck three African-Americans using peremptory strikes. Venireperson No. 20 was one of these strikes, objected to by AGC/Appellant based on Batson, proclaiming that all three peremptory strikes were used on African-Americans. AGC/Appellant therefore identified a cognizable racial group to which Venireperson No. 20 belonged. Respondent admits that race is a protected class under Missouri law and that although AGC/Appellant is a limited liability company, its member appearing at trial, Brown, is African-American.

Pursuant to the second step in the procedure for evaluating a Batson challenge, the burden shifts to the party making the peremptory strike, Respondent, to provide a specific and race-neutral explanation for making the strike. HK provided three reasons that it struck Venireperson No. 20. First, Respondent said Venireperson No. 20 was a plaintiff in a lawsuit and therefore might favor the plaintiff, AGC/Appellant. However, it was discovered that the potential juror was actually a defendant in a lawsuit. The trial court also rejected this reason because there were other similarly situated white jurors who were parties to a lawsuit. Second, Respondent provided that Venireperson No. 20 was previously from Wisconsin, but the court countered the argument stating that no one else was asked about a prior residence and it was not a reason to strike someone. Third and finally, HK provided that Venireperson No. 20 had previously been a law enforcement officer.

While the burden shifted back to the party raising the Batson challenge, AGC/Appellant failed to identify any non-racial minority who had previous law enforcement experience or why this explanation was pretextual. The trial court denied the Batson challenge by AGC/Appellant. Now on appeal, AGC/Appellant argues Respondent's explanation is pretextual because Respondent did not allege why this reason mattered.

8

We determine whether an explanation is pretextual by considering if it is plausible in light of the totality of the facts and circumstances of the case. Parker, 836 S.W.2d at 939. A plausible explanation is one that is race-neutral, clear and reasonably specific, legitimate, and related to the facts or issues of the case. McFadden, 216 S.W.3d at 676. "A legitimate reason is not one that makes sense but one that does not deny equal protection." State v. Weaver, 912 S.W.2d 499, 509 (Mo. banc 1995). Nevertheless, "implausible or fantastic justifications may (and probably will) be found to be pretexts for purposeful discrimination." Marlowe, 89 S.W.3d at 469 (quoting Purkett v. Elem, 514 U.S. 765, 768 (1995)). Additionally, we will consider a list of non-exclusive factors, including: "the explanation in light of the circumstances; similarly situated jurors not struck; the relevance between the explanation and the case; the demeanor of the [prosecutor] and excluded venire members; the court's prior experiences with the prosecutor's office; and objective measures relating to motive." State v. Johnson, 284 S.W.3d 561, 571 (Mo. banc 2009).

State v. Murray, 428 S.W.3d 705, 711 (Mo. App. 2014).

In Goodman v. Holly Angle, LMT, 342 S.W.3d 458, 464 (Mo. App. W.D. 2011), the Missouri Court of Appeals held that because the party making the Batson challenge failed to challenge the race-neutral reasons offered by the party striking a venireperson at trial, they were precluded from challenging them on appeal. Here, AGC/Appellant simply stated it could not point to anyone who was a non-racial minority who was similarly situated. We find AGC/Appellant did not overcome its burden and demonstrate that Respondent's reason that Venireperson No. 20 had previous law enforcement experience was pretext for racial discrimination at trial, and that AGC/Appellant is barred from arguing on appeal what it failed to argue then. Point denied.

**Point II: Evidence of lost profits**

In its second point, AGC/Appellant alleges the trial court erred in prohibiting AGC/Appellant from testifying about lost profits because the trial court sustained objections to preliminary testimony that did not matter in that AGC/Appellant was merely trying to testify about lost profits, which the trial court did not allow by prohibiting discussion of contracts and stating the evidence was not sufficiently detailed. AGC/Appellant argues its sole member would

9

have testified that he entered into contracts with other entities, had preliminary estimates as to how much those contracts were worth and the profit to be made on each, and that the trial court abused its discretion by prohibiting this evidence.

A.  Standard of Review

A trial court has considerable discretion in the admission of evidence, and its decision will not be reversed unless there is a clear abuse of that discretion.  American Eagle Waste Industries, LLC v. St. Louis County, Missouri, 463 S.W.3d 11, 23 (Mo. App. E.D. 2015).  An abuse of discretion occurs when the trial court's decision is "clearly against the logic of the circumstances then before the court and is so unreasonable and arbitrary that it shocks the sense of justice and indicates a lack of careful, deliberate consideration."  Lozano v. BNSF Ry. Co., 421 S.W.3d 448, 451 (Mo. banc 2014).  No abuse of discretion occurs if reasonable persons could differ as to the propriety of the trial court's decision.  Id.

B.  Analysis

Lost profits are recoverable in a variety of contract, tort, and business interruption cases. Ameristar Jet Charter, Inc. v. Dodson Intern. Parts, Inc., 155 S.W.3d 50, 55 (Mo. banc 2005). The term "loss of profits" refers to the amount of net profits the plaintiff would have realized had its clients not been lost as a result of the defendant's actions.  Id. at 54.  Recovery of lost profits is "prohibited when there is uncertainty or speculation as to whether the loss of profits was the result of the wrong, and whether any such profits would have derived at all."  Midwest Coal, LLC ex rel. Stanton v. Cabanas, 378 S.W.3d 367, 374 (Mo. App. E.D. 2012) (citation omitted).

During trial, Brown testified regarding Exhibit 23, which was a contract authorization for a health care center, Homer G. Phillips, a contract for Myrtle Hilliard Davis Comprehensive Health Care Center, and another contract for Florence Hill Health Care Center.  He said he

10

entered discussions with the CEOs of those establishments to do work in the fall of 2015, and although agreements were signed, AGC/Appellant was not able to do the work because it was working on Doctor's Building first. Brown testified, "it was a good practice to work on a client's building and finish it before you start on another client's building." He testified that AGC/Appellant made the decision not to take on the work of the three additional projects until it completed work on the Building.

When asked if he had an estimate as to how much those three total contracts would have been for, Respondent objected that Brown had not provided any foundation to what the work would be, the contract, the agreements being substantiated or authenticated. The attorney for AGC/Appellant then attempted to lay a foundation on what kind of work needed to be done at the facilities. Appellant testified that they included "dry outs" and "extensive roof work" with "major interior work along with also heating and cooling work that needed to be done with these buildings" that were five or six times larger than Doctor's Building. Brown said he was able to form preliminary estimates as to how much that work would have entailed, but Respondent objected again for lack of foundation and speculation. Outside of the presence of the jury, the trial court asked whether there were any "underlying statements, evidence other than what [Brown] has to say with regards to these other jobs," and when AGC/Appellant's attorney answered "no," the trial court sustained the objection.

AGC/Appellant's attorney then made a record:

> I laid the foundation for what he needed to prepare the estimates. There's no requirement in the law that I have to have any kind of written estimates in order to present estimates as to how much this work would have done and how much money he lost. He's entitled to come in and testify to it. There isn't anything that requires me to do anything other than lay the foundation, which I have done. He knows what the work was and how much he would have charged to do it.

The trial court sustained the objection because there was not a sufficient foundation to show what was required, the specific types of roof work and materials needed to get to the point

11

to provide a written estimate. AGC/Appellant argued that Brown could still form an estimate as to how much that cost was based on an inspection of the properties, learning what work was needed and his forming preliminary estimates. It argued that the industry standard was to take 10 percent profit off a job. AGC/Appellant did not intend to call the CEO of these additional health care centers to trial to authenticate their signature or testify about the projects. The trial court sustained Respondent's objections to the three alleged projects.

Here, the jury found against AGC/Appellant on its breach of contract claim for an unpaid invoice. Thus, the jury would not have found any other additional damages for the alleged lost profits from the three other projects that AGC/Appellant chose not to perform because "it was good practice to work on a client's building and finish it before you start on another client's building." AGC/Appellant could not recover for lost profits when it could not demonstrate that the evidence of the work at issue was lost as a result of Respondent's actions rather than its own decisions. Accordingly, AGC/Appellant would not have been able to prove the lost profit from the other projects was lost "as a result of the defendant's actions." Where the exclusion of proffered evidence does not materially affect the merits of the action and the plaintiff was not prejudiced, the trial court did not abuse its discretion. See Byers v. Cheng, 238 S.W.3d 717, 728 (Mo. App. E.D. 2007). Finding no prejudice here, the trial court did not abuse its discretion in excluding AGC/Appellant's evidence of lost profits from three subsequent contracts. AGC/Appellant's second point is denied.

### III. Cross-appeal: Prejudgment interest

Having addressed AGC/Appellant's arguments on appeal, we now turn to Respondent's cross-appeal. On cross-appeal, Respondent alleges the trial court erred in awarding prejudgment interest to AGC/Appellant even though AGC/Appellant did not win any award of money

damages at trial. Respondent alleges the trial court wrongly applied the prejudgment interest statute, Section 408.020. We agree and reverse the trial court's award of prejudgment interest.

A. Standard of Review

Determination of the right to prejudgment interest is reviewed de novo because it is primarily a question of statutory interpretation and its application to undisputed facts. Children Intern. v. Ammon Painting Co., 215 S.W.3d 194, 202 (Mo. App. W.D. 2006).

B. Analysis

In its First Amended Petition, AGC/Appellant's breach of contract claim alleged that it had been damaged in the sum of $411,139.16 for the contract and additions, plus $200,000 in consequential damages due to foregone work; in its prayer for relief, AGC/Appellant asked for judgment against Respondents in the amount of $611,139.16, pre-judgment and post-judgment interest, court costs, and "such other and further relief as the Court may deem just and proper." At the beginning of trial, the parties agreed that the trial court, rather than the jury, would determine pre-judgment interest.

> The trial court's Amended Judgment from November 29, 2018, found the following:
>
> the Plaintiff did not dismiss the Quantum Meruit rather they elected to proceed as to the breach of contract claim. The Plaintiff testified that he received a payment of $30,000 on August 21, 2018 prior to the trial and that payment was not denied by the Defendant. The court finds that pursuant to Section 408.020 RSMO the Plaintiff should be entitled to pre-judgment interest on that sum over Defendant's objection.

The trial court amended that with an Order and Judgment dated January 3, 2019, "such that the prejudgment dollar award is awarded against only HK Internal Medicine Associates, LLC, and not against the individual Defendant (Dr. Ekramuddin)."

Prejudgment interest is based on either statute or contract. Children Intern., 215 S.W.3d at 202-03. Here, the trial court awarded prejudgment interest based on the statute, Section

13

408.020. Section 408.020 states:

> Creditors shall be allowed to receive interest at the rate of nine percent per annum, when no other rate is agreed upon, for all moneys after they become due and payable, on written contracts, and on accounts after they become due and demand of payment is made; for money recovered for the use of another, and retained without the owner's knowledge of the receipt, and for all other money due or to become due for the forbearance of payment whereof an express promise to pay interest has been made.

According to this statute, parties with outstanding accounts are entitled to pre-judgment interest of nine percent if the amount owed is liquidated or readily ascertainable and a demand for payment, definite as to both time and amount, has been made on the debtor party. Nusbaum v. City of Kansas City, 100 S.W.3 101, 109 (Mo. banc 2003). Awards of pre-judgment interest are not discretionary; if the statute applies, the trial court must award pre-judgment interest. Holtmeier v. Dayani, 862 S.W.2d 391, 407 (Mo. App. E.D. 1993) (relying on California & Hawaiian Sugar v. Kansas City Terminal Warehouse Co., 788 F.2d 1331, 1335 (8th Cir. 1986). However, "[t]he courts may also consider equitable principles of fairness and justice when awarding pre-judgment interest." Catron v. Columbia Mut. Ins. Co., 723 S.W.2d 5, 7 (Mo. banc 1987). The purpose of statutory pre-judgment interest is to promote settlement of lawsuits and fully compensate plaintiffs by accounting for the time-value of money. Hopkins v. Am. Econ. Ins. Co., 896 S.W.2d 933, 945 (Mo. App. W.D. 1995) (discussing pre-judgment interest under Section 408.040). Interest is awarded for the obligor's failure to pay money when payment is due, "even though the obligor refuses payment because the obligor questions legal liability for all or portions of the claim." Mitchell v. Residential Funding Corp., 334 S.W.3d 477, 509 (Mo. App. W.D. 2010) (quoting Midwest Division-OPRMC, LLC v. Department of Soc. Svcs., Div. of Med. Svcs., 241 S.W.3d 371, 384 (Mo. App. W.D. 2007).

Principles of equity and the policy behind pre-judgment interest appear to have driven the award here. However, the purpose of the statutory pre-judgment interest to promote settlement

14

does not eliminate the need for the required elements that money is due and payable, and a demand was made. AGC/Appellant argues it pled (and tried by implicit consent) that work was done and not paid for, which was all that was needed to award prejudgment interest. In its breach of contract claim before the jury, AGC/Appellant submitted the following instructions, such that the jury find in its favor *if*:

> First, [AGC/Appellant] and [Respondent] entered into an agreement whereby [AGC/Appellant] agreed to act as [Respondent's] contractor and perform work at the address where [Respondent's] offices were located, and [Respondent] agreed to pay [AGC/Appellant] for this work, and
> Second, [AGC/Appellant] substantially performed [AGC/Appellant's] agreement in a workmanlike manner, and
> Third, [Respondent] failed to perform [Respondent's] agreement, and
> Fourth, [AGC/Appellant] was thereby damaged.

Unfortunately for AGC/Appellant, the jury found in Respondent's favor, awarding no money to AGC/Appellant. It is here that we find the problem with the statutory claim for pre-judgment interest pursuant to Section 408.020. There was no amount found to be owed by Respondent to AGC/Appellant, either "liquidated or readily ascertainable." AGC/Appellant argues its lawsuit is considered a demand for payment and filing it was the time used by the trial court, and that the "ascertainable" $30,000 amount was further discussed in trial as an amount received by Respondent from the insurance company and held by Respondent from January 2016 until August 2018, just before trial began. Respondent argues it did so because it did not believe the work was done. However, even AGC/Appellant admits that the interest calculation is made on the amount ultimately awarded by the fact finder. Here the amount was zero. The trial court awarded statutory prejudgment interest without a finding the money was due to the plaintiff, AGC/Appellant, on a breach of contract claim. There was no finding that Respondent breached a contract by holding the $30,000 money, and additionally, costs were even awarded against AGC/Appellant. For this, we find the trial court erred. Respondent's cross-appeal is granted.

15

### III. Conclusion

The trial court's judgment is affirmed in part and reversed as to the award of prejudgment interest to AGC/Appellant.

_____

ROY L. RICHTER, Judge

Robert M. Clayton III, P.J., concurs
Robert G. Dowd, Jr., J., concurs

16